## BOTT, SURV. PART., &c. vs. McCOY & JOHNSON.

1. A factor or commission merchant is not authorized by law to pledge the goods of his principal for his own use, and his pledgee can acquire no title to them, as against the principal, whether he dealt with the factor in ignorance of his title or not. The principal may bring trover against the factor and his pledgee, or either of them, at his election.

2. But the factor is estopped by his own tortious act, and he cannot take advantage of the violation of his authority to set aside the contract.

3. A subsequent purchaser from the factor acquires no better title than the factor himself had, and cannot recover the goods from the pledgee, although the sale was made within the scope of the factor's authority.

4. When a case is submitted upon an agreed statement of facts, the court can only decide the questions of law arising upon those facts, and it will not infer the existence of other facts from those which are admitted.

5. B. & Co. received a lot of cotton, as commission merchants, which they stored with defendants, who were ware-house men; afterwards, having obtained an advance of money for their individual use from plaintiffs, they pledged the cotton as security for its payment, and gave plaintiffs an order on defendants for its delivery; defendants acknowledged plaintiffs' title, and agreed to hold the cotton for them, and plaintiffs agreed to pay the storage on it; B. & Co. afterwards sold the cotton to T. & S., and gave them an order on defendants for its delivery; defendants delivered the cotton to them, and received it again from them, on the same day, for storage; B. & Co. paid a part of the money, which they received from T. & S. on the sale of the cotton, to plaintiffs, on an account due them previous to the pledge of the cotton; plaintiffs received the money in ignorance of the source from which it was derived, and credited it on B. & Co.'s prior indebtedness to them. Plaintiffs brought detinue against defendants for the cotton; and *it was held :*

1. That plaintiffs' title was superior to that of T. & S.;

2. That the receipt of the money by plaintiffs was not a confirmation of the subsequent sale by B. & Co. to T. & S., and did not entitle defendants to a credit on the amount of the recovery against them.

Bott v. McCoy and Johnson.

6. When the judge is substituted for the jury, by consent of parties, his decisions upon questions of fact will not be revised by the Appllate Court.

ERROR to the Circuit Court of Mobile.
Tried before the Hon. John Bragg.

This was an action of detinue by McCoy & Johnson against Holmes & Bott, surviving partners of Holmes, Bott & Earle, for seventy-eight bales of cotton. The case was submitted upon an agreed statement of facts, and judgment thereon was rendered in favor of the plaintiffs. The agreed statement of facts is set out at sufficient length in the opinion.

HAMILTON and SEMPLE for plaintiffs in error :

The act of an agent is the act of his principal : a sale by the factor, of his principal's goods, lodged with him for sale, operates a contract between the principal and the vendee ; the title passes *directly* from the former to the *latter*, and not from the factor. 7 Mass. Rep. 319; 13 ib. 379; 6 Wheat. Rep. 79–94; 5 Serg. & R. 27; 2 Ashmead Rep. 485–513.

The principal can sue the buyer for the price (6 Cowen 186) and the buyer the principal for his damages, &c., (6 Cowen 354;) and this though the factor need not name his principal. 7 Mass. Rep. 44.

If this suit were then between the planter and Tarlton & Scott, the purchasers, the sale by Bower & Co must have been upheld; for the vendees acquired the planter's title. But before the sale to Tarlton & Scott, Bower & Co. pledged the cotton for their own debt, to McCoy & Johnson.

By this act as against the principal, McCoy & Johnson took no title; it was a tortious and void act. A factor is not permitted to pledge. 2 Kent Com. 625, Lecture XLI; 11 Howard's S. C. Rep. 209–224, et seq.; 1 Mason Rep. 440; 4 Rawles Rep. 195; Russell on Factors 56–116, (49 Law Lib.)

And the principal could recover back the goods without tender of advances. 1 Mason Rep. 440; 11 Howard 224.

So a purchaser from the principal could recover. 1 Washington Rep. 174.

Tarlton & Scott are purchasers for value, without notice and in the strict and usual line of the trade; and though purchasers through Bower & Co., they are, in law, the purchasers of the principal, and acquired his rights. Vid. Auth's. Sup.

In comparing the title of these parties, McCoy & Johnson and Tarlton & Scott, the former have their title from Bower & Co., founded on a violation of duty and of the law by Bower & Co. The latter have the title of Bower & Co.'s principal, for value, in the course of trade, without notice of any fraud or irregularity. The former are chargeable with notice. 11 Howard Rep. 224; 11 Ala. Rep. 407, bot. page; 14 Ala. Rep. 405.

This is not like the case of an illegal sale by an administrator; in his case the law casts the title on him, but Bower & Co. never had any title to part with.

They had the possession of the cotton, but their possession was the planter's, and by transferring the possession, the pledgees became the bailees of the planter.

But the purchasers acquired the possession without any illegal act; they had, it is contended also, the right of possession, and the title.

They obtained a perfect right, unless the previous pledge of Bower & Co. in some way prevented it; but how could it? that act was void: (1 Wash. Rep. 174 and Auths. Sup.) it could become binding only by the ratification of the principal; there is no proof of ratification; there can be no presumption of ratification; for the sale to Tarlton & Scott was made in less than two weeks after the pledge by Bower & Co.

Did the misconduct of Bower & Co. work a revocation of their agency? it furnishes good ground for such revocation. There is no proof of actual revocation; but even if revoked in fact or in law, *non constat*, but it was renewed by the principal, with instructions to recover and sell the cotton.

There is no evidence upon the point; the naked fact of malfeasance by the agent exists, that does not revoke the agency in the factor.

It is conceived that under no rule of law, operating to discharge an agency, can the agency of Bower & Co. be held to be discharged, so as to defeat the right of the *bona fide* purchasers, unless it be because the pledge to McCoy & Johnson converted the planter's title to the cotton into a chose in action.

But would such a result follow in this case? The contrivances in this case were of such a character that Tarlton & Scott acquired the possession as fully as McCoy & Johnson.

The purchasers were ignorant of any adverse claim; there is no proof the planter was any wiser, and he was the seller; his sale to Tarlton & Scott, in ignorance of an adverse claim, would be binding.  2 Sumner Rep. 211; 9 Porter Rep. 479, bot. page; 5 Ala. Rep. 424; 13 Ala. Rep. 223–230.

By analogy to the decision of this court, Moore vs. Easly, Adm'r, 18 Ala. Rep. 622, Bower & Co. were fully authorized to undo their pledge to McCoy & Johnson by sale of the property, which was within their authority.

If this be so, then the title of Tarlton & Scott must prevail over the claim of McCoy & Johnson, and the ware-house man, having recognized the title of the former, is entitled in this suit to defend himself upon that title.  5 Taunt. Rep. 759; 20 Eng. Com. Law; 1 Barn. and Ad. 450 ; and Story Bail. 1st Ed.; 6 Wharton Rep. 418; 6 Watts & Serg. 75; 9 Ala. Rep. 748.

The case of Ogle vs. Atkinson, 5 Taunt. 759, is said to be over-ruled, and that a ware-house man or bailee shall not be permitted to deny the title of his principal.

As a general rule, this is true; but if the title of the principal is founded in a fraud, the bailee is not estopped to recognize the right; he is not compelled to make himself a participator in it.  Cowper Rep. 595; 23 Eng Com. Law, 9 Bingham Rep. 382; Smith Merc. Law, p. 83 note K; Law Lib. p. 102 of Am. Ed.; Story, Bailments § 450–582–266, and Story, Agency § 217 note.

The course pursued in this case, is the course of proceeding recognized as the usual and proper mode in the English practice, in cases situated as this is.  Vide opin. Ld Chr. Brougham, p. 191 bot., 13 Eng. Ch. Rep.; 2 Russ. and Myln. 606–609 ; 4 Sim. Rep. 218.

CAMPBELL for defendants:

1. We contend, that the meaning of defendants' contract is, that they should hold the cotton safely, and that it is not in their power to maintain a discussion with the plaintiffs in reference to the title of the plaintiffs.

2. The duty of the plaintiffs in error, (ware-house men,) was to surrender the cotton to McCoy & Johnson, and when an adverse claim is set up they should notify their principals of its existence, and not yield to it without resistance.

3. We contend, that the ware-house men cannot in this action hold to the cotton, defending themselves under the adverse title of the second purchasers from Bower. Story on Bailments, §§ 266–450–582 ; 2 Cowp. Rep. 244–344 ; 6 Adol. & E. 515 ; 2 B. & C. 540 ; 47 Bing· 339 ; 10 Bing. 246 ; 9 Price 269 ; 44 Law Library 353–4 ; 18 Vermont 186–190 ; 3 Pick. 38 ; 8 Wend. 610 ; 2 Mylne & Craig Rep. 1 ; 11 Paige 365 ; 9 Ala. Rep. 317 ; 12 Ala. Rep. 520.

4. We contend further, the defendants are not excused by the ignorance or inattention of their clerk, in issuing the receipts ; it was done in the course of his employment.

5. The ware-house men are not excused from delivering the cotton to their principals, on the ground that Bower, under certain circumstances might have made a bargain for the sale of the cotton. The evidence of ownership was the ware-house receipts, and nothing that Bower could have done, divested their property without their consent and knowledge. For Bower had not the *indicia* and evidence of property, and must have applied to them to get them. These indicia of title were not surrendered in this case, nor was the consent of McCoy & Johnson given to the sale.

6. The payment of a portion of the money taken on account of the cotton, on a debt due to McCoy & Johnson by Bower & Co., cannot be received in evidence as an answer to their claim. They did not recognize the sale nor receive this money in fulfilment of Bower's obligation to them. The conversion was complete by Bower, and the payment was independent of this transaction.

The cases cited do not remove this case from the operation of the principle for which we contend :

1. A ware-house man, or other bailee, may relieve himself from liability when property has been taken from him by a legal proceeding, or exterior force.

2. When the bailee and his principal were parties to a fraud.

3. When the ware-house man has been fraudulently imposed upon by his principal, so that erroneous acknowledgments were made, as in the cases cited. 9 Ala. Rep.

4. The authorities no where say that a bailee can voluntarily, and without notice to the bailors, who are innocent hold-

Bott v. McCoy and Johnson.

ers of title, submit to a superior title in a third person, and can defend a continuance of his possession under that title.

The cases in Pennsylvania proceed entirely upon the fraud of the principal. The other cases, on the *vis major* under which the property was taken.

5. The facts do not show that McCoy & Johnson surreptitiously obtained the delivery order, or were in collusion with Bower & Co. to commit a fraud; or was a party to a fraud, upon the planter or Bower & Co., or Tarlton & Scott; nor is there any pretence of such a fraud having existed, alleged by the planter, Bower & Co, or Tarlton & Scott.

DARGAN, C. J.—The cotton sued for was received by William Bower & Co., as commission merchants, from the planters who raised it. Bower & Co. stored the cotton with the defendants, Holmes & Bott, who were warehouse keepers, and it was entered on the books of the warehouse in their name. Shortly afterwards Bower & Co. obtained an advance of money for their own benefit from McCoy & Johnson, and pledged the cotton as a security for its payment. They gave to Johnson & McCoy an order for the cotton, which being presented to the defendants, they recognized the title of the plaintiffs, and their clerk executed to them a receipt showing that they undertook to hold the cotton for the plaintiffs, who agreed to pay the storage. After this, Bower & Co. sold the cotton to Tarleton & Scott, and gave them also an order for its delivery. The defendants recognized the title of Tarleton & Scott, and delivered them the cotton, which was re-stored with the defendants on the same day. The plaintiffs demanded the cotton of the defendants, but they refused to deliver it; whereupon this suit was brought whilst they held the cotton as the property of Tarleton & Scott. The question of law which we propose to examine arising on these facts is, which title is to be preferred, that of the plaintiffs, or that of Tarleton & Scott.

The principle cannot be doubted, that a factor or commission merchant is not authorized by law to pledge the goods of his princpal for his own use. The party receiving such a pledge and advancing his money, acquires no title as against the principal. Nor is it material in such a case, whether the

pledgee knew that he was dealing with a factor or not; if he knew the fact, he was bound to know *that by law* the factor had no authority to pledge the goods of his principal; if he did not know that the person with whom he was dealing was a factor, still his want of knowledge of this fact could not extend the authority of the factor. Story on Agency, § 225, and cases there cited. As such an act is not within the ordinary powers of a factor, it is clear that it cannot work a divestiture of the title of the principal; and he may pursue the goods in the hands of the pledgee, or may bring trover against both the pledgee and factor, or either of them, at his election. Story on Agency § 437.

But this violation of the factor's authority is injurious to the rights of the principal alone; he may ratify or confirm the act at his pleasure; and if he is content therewith, no one else can complain. Certainly it would be contrary to all rule, to suffer the factor himself to allege his own tortious acts as a ground for setting aside the contract. He cannot bring trover or detinue in his own name, and recover of the pawnee the goods, on the ground that he had tortiously violated his authority, and thereby injuriously affected the rights of his principal. I apprehend that no case can be found, where a trustee or a bailee, who has converted the goods intrusted to his care, has been allowed to recover the goods from his vendee, on the ground that he had violated his authority in making the sale. But on the contrary, every one who undertakes to transfer goods, whether it be by way of pledge or sale, impliedly stipulates that he has the authority or the right to do so; and he must be held estopped by his act, and cannot and ought not to be allowed, to allege his *own violation of authority* to set aside the transfer, or to recover the goods. This principle of law has frequently been recognized by this court. In the case of Pistole v. Street, 5 Porter, 64, an administratrix having intermarried, her husband sold a slave belonging to the estate of the decedent, without authority from the County Court, and after the death of her husband she brought suit against her husband's vendee, to recover the slave, on the ground that he was sold without authority. But this court held, that the act of her husband must be considered as her own; and although the creditors and distributees

were not without remedy, yet she was estopped, and could not set up her want of authority to sell. Again: in the case of Fambro v. Gantt, 12 Ala. 298, it was held, that though no title passed to the purchaser by a private sale of the property of an estate by the administrator, yet the administrator was estopped from recovering it in his own name.

These authorities, as well as the principle on which they rest, to my mind are conclusive, to show that Bower & Co. could not recover the cotton from McCoy & Johnson; for they cannot set up their own tortious act on the rights of a third person, to set aside their contract. As to them it is valid, and their principal alone, who was injured by it, can set it aside. The necessary sequence from this proposition is, that if Bower & Co. cannot themselves recover the cotton of McCoy & Johnson, they cannot by a sale in their own name enable another person to do so. This would be to allow them to do through another, what they could not do themselves. The cotton was in the possession of the plaintiffs at the time of the sale to Tarleton & Scott, and by virtue of a contract that gave them a good title as against Bower & Co.; the sale to Tarleton & Scott was in pursuance of the original authority which Bower & Co. had abused; but so far as the record discloses, the planters to whom the cotton in fact belonged, have not complained; they may be content with the transfer by way of pledge. Under such circumstances, neither Bower & Co. nor any one claiming under them, can allege the injury done to the owners of the cotton, by a tortious violation of the authority intrusted to Bower & Co., to set aside the contract by which McCoy & Johnson obtained the possession of the cotton. We will not say that the owners of the cotton might not in their own name have sold it, and thereby enabled their vendee to recover. But we feel assured that Bower & Co. could not, by virtue of their original authority, sell in their own names, and enable their vendees to set aside a contract which was at least binding on them. We therefore come to the conclusion, that the title of McCoy & Johnson is superior to that of Tarleton & Scott. They both originate from the same source, to-wit: from Bower & Co.; and the title of the plaintiffs is valid against all the world, except as against the original owners of the cotton, who alone were

37

injured by the tortious act of their factors. But as they have not complained of it, *no one else can.*

This view of the case renders it unnecessary, to examine in what cases, and under what circumstances, a bailee may defend himself when sued by his bailor, to recover the goods intrusted to his care, by interposing a superior title in another which he, the bailee, has recognized.

It is however insisted, that the facts agreed upon would warrant the inference, that Bower & Co. were acting as the agents of McCoy & Johnson in making the sale to Tarleton & Scott. It is a sufficient answer to this to say, that where the facts of a case are agreed upon, and the questions of law alone are submitted to the court for its judgment, we can only respond to the questions of law arising upon the admitted facts. The inference of one fact from another is a question of fact, and not of law, and this inference must be drawn by a jury; and it would be traveling out of the province of the court, as well as of the agreement in this case, if the court was to infer another fact, and pronounce the law arising thereon.

It was also shown, that Bower & Co. paid to the plaintiffs a considerable portion of the money received from Tarleton & Scott on the sale of the cotton, upon an account due by them to the plaintiffs anterior to the pledge of the cotton; but the plaintiffs were ignorant of the source from whence the money came at the time they received it. On this evidence it was contended, that the act of the plaintiffs in receiving the money ought to be construed as a confirmation of the sale, or at all events, as a credit upon the amount they otherwise would be entitled to recover. But as the plaintiffs did not know that the money paid to them was part of the proceeds of the cotton, they did not, by receiving it, confirm the sale to Tarleton & Scott; and as the amount received by them was credited upon a prior indebtedness, the amount they advanced to Bower & Co. upon the cotton is still due them.

In view of all the facts, we see *no error in the judgment,* and it must be affirmed.

NOTE.—A re-hearing was granted in this case. and the following opinion afterwards delivered:

PER CURIAM.—This cause has been re-argued, and we are satisfied that the principle of law pronounced in the opinion is correct. In reference to the question of fact, whether Bower & Co. were not the agents of McCoy & Johnson in making the sale to Tarleton & Scott, we will only add, that when the judge is substituted, by consent of the parties, in lieu of the jury, we will not revise his judgment upon the facts. If the evidence be conflicting, and he decides against the weight of testimony; or if it would have justified an infer-. ence of fact which the court refused to draw, we will not reverse his judgment, merely because we could, or might have come to a different conclusion of fact. Etheridge v. Malempre, 18 Ala. 565.