# Moore & Co. *v.* Robinson.

### *Garnishment.*

1. *Objection to deposition; when comes too late.*—Motion to suppress part of a deposition comes too late after the trial has been entered upon, if based on the ground that the answers are not responsive to the questions; because, if such objections are sustained, the deposition may be retaken and the facts proved lawfully. Such objection should be made before the trial is commenced.

2. *Same; what objection may .properly be made on trial.*—Objections on the ground of illegality or irrelevancy may properly be made pending the trial of the cause.

3. *Evidence; what inadmissible.*—A witness who testifies to the receipt of a telegram from the plaintiff, requesting him to notify the defendant that certain cotton was not the property of the shipper, but belonged to plaintiff, and that the telegram was sent by a messenger to the business house of defendants, cannot be permitted to testify what the messenger said when he returned as to the delivery of the telegram to the defendant, and what they said in reply; this is but hearsay.

3. *Purchaser from agent; when does not acquire title against principal.*—Where the plaintiff authorized a person to ship cotton belonging to him, to the defendants in New York, and the testimony shows that he gave such person authority to ship in the plaintiff's name, and did not give authority to ship in any other person's name, such agent, by shipping the cotton in his own name, taking a bill of lading accordingly, cannot, by negotiating such bill of lading, charge the cotton with the payment of advances made on the faith of such bill of lading.

4. *Title; who cannot give.*—Although possession is one of the most general indicia of ownership, mere possession of a chattel, without title, will not enable a man to transfer a better title than he had himself; and one purchasing from a party in possession, who had no authority to sell, can acquire no right to the property as against the owner.

5. *Bill of lading; negotiability of.*—A bill of lading issued by a railroad company for the receipt of cotton for shipment, does not stand in the category of commercial paper. A merchant who advances money to a person not the owner, on the strength of the bill of lading, does not thereby acquire a lien on the cotton, or right of property therein.

6. *Ratification; what does not amount to.*—Although ratification of unauthorized acts, given after knowledge brought home to the person for whom the act purports to have been done, will validate the act to the same extent as if it had been previously authorized, mere acquiescence cannot be considered as ratification, and furnishes no ground for the doctrine of estoppel, unless such silence and acquiescence, after knowledge, forms the basis, or becomes the authority on which another, to the knowledge of the true owner, parts with value or incurs liability.

[Moore & Co. v. Robinson.]

7.  *Charge; what erroneous.*—It is error in the court in its general charge, to refer to authorities cited by counsel "as being so like this case in its facts," &c. Such a charge is a charge on the effect of the evidence, and has a tendency to mislead the jury.

8.  *Charge; what properly refused.*—A charge which requires the owner of cotton which had been shipped by an agent, in violation of instructions, in his own name, to notify the consignee on the day of shipment, that the cotton was his, and wrongly shipped in the name of the agent, asserts too strict a rule of diligence, and is properly refused.

9.  *Plea; what bad on demurrer.*—A plea by defendants, which fails to aver authority in the shipper to ship, but avers "that the cotton was consigned to them through their agent as the property of one W. J. Carter," and "that they made an advance of one thousand dollars, and honored a draft of four hundred dollars, on the faith of the bill of lading, and of said cotton, whereby they had a lien on said cotton which they had acquired *bona fide,*" is bad on demurrer, when filed to a complaint alleging the ownership of the cotton to be in the plaintiff.

10.  *Charge; what should be given.*—Although a plea may be bad on demurrer, if the plaintiff takes issue on it, a charge directing the jury to find for the defendant if the evidence sustains the plea, should be given.

11.  *Charge; what improper.*—A charge to the jury, that if "they believe from the evidence that plaintiff acquiesced in the act of the shipper, by which the cotton was shipped to defendants in his (the shipper's) name, then the law is that the plaintiff is estopped from complaining of the consequences of the assumption of ownership on the part of the shipper," is erroneous, and properly refused.

APPEAL from Madison Circuit Court.

Tried before Hon. LEWIS WYETH.

The appellee, Robinson, commenced this action by attachment against the appellants, Moore & Co., to recover of them the sum of $1,500, proceeds of seventeen bales of cotton, the property of plaintiff, which defendants sold as the property of one Carter, applying the proceeds to the satisfaction of a debt Carter owed them.

The defendants pleaded—1. "Not guilty." 2. "That the cotton, for the price of which said plaintiff sues, was consigned to them through their agents as the property of one William J. Carter; that their said agent advanced on the bill of lading, covering said cotton, at the time of shipment to said Carter, the sum of one thousand and five dollars; that they (defendants) honored and paid a draft drawn by said Carter on the faith of said cotton, for four hundred and seven dollars and twenty cents, and there was and is a general balance due said defendants as the factors of said William J. Carter, a sum greatly in excess of the amounts realized from the sales of said seventeen bales of cotton, and defendants aver that they have a lien on said cotton and the proceeds thereof, to satisfy said amounts advanced and paid by them as aforesaid, and for said balance due as aforesaid, which they acquired *bona fide,* and this they are ready to verify." 3. "General issue, with leave to give any special matter in evidence, which, if well pleaded, would constitute

[Moore & Co. v. Robinson.]

a good defense." Issue was taken on all of these pleas. The other facts, material to a proper understanding of the case, will be found in the opinion.

The court gave a general charge to the jury, which, among other things, contained the following clause: "But, gentlemen, the Supreme Court has relieved me of a great deal I intended to say. The case read by counsel for plaintiff, in 46 Ala., is so much like this in its facts, and in the law it decides, that it would seem to be unnecessary to say any thing further on the subject." The appellants objected and excepted to this portion of the general charge. The appellants then requested the following written charges, which were separately refused, and a separate exception reserved to the refusal to give each of said charges: 3. "That it was Robinson's (plaintiff) duty on the 3d day of May, 1871, to notify Robert Moore & Co. by telegraph that the cotton was his property, and shipped in Carter's name in violation of his instructions." 4. "That the notice by Robinson to defendants will not deprive defendants of their right to retain from the proceeds of the cotton an advance they had made to Carter on said cotton, on the faith of its shipment to them before such notice." 5. "If the jury believe from the evidence that plaintiff acquiesced in the act of William J. Carter, by which he (Carter) shipped the cotton in controversy to Robert Moore & Co., in his (Carter's) own name, then the law is, that plaintiff is estopped from complaining of the consequences of this assumption of ownership on the part of said Carter in said seventeen bales of cotton." When this charge was asked by the defendants, the court declined to give it, and in doing so stated that he considered it abstract, and that he had heard no evidence showing the acquiescence of the plaintiff in the shipment of the cotton in the name of Carter, to which statement of the court the defendant excepted. Thereupon the court said it withdrew the remark, and added, "If the jury find that there was evidence tending to show that plaintiff acquiesced in what Carter did, they would consider it." The various rulings of the court, to which exceptions were reserved, are now assigned as error.

JOHN D. BRANDON, and DAVID P. LEWIS, for appellants. The answer of the witness, Chambers, was pure hearsay, and was not admissible. The messenger alone, who gave the notice, could testify to it as a fact. The same reasoning shows that the testimony of Chambers as to the response was also hearsay. Robinson gave Carter such an agency and dominion and control over the cotton as justified appellants in dealing with him as owner.—8 Pick. 101. Robinson allowed

[Moore & Co. v. Robinson.]

Carter to obtain possession of the bill of lading, and he obtained a valuable advance from Moore & Co. on it as collateral security. This gave them a better right than any one else had.—12 Pick. 297. This bill of lading was a negotiable instrument.—1 Peters, 445; 12 Pick. 307; 5 Met. 306; 18 Johns. 157; Redfield on Railways, 143; 30 Ala. 608. Robinson allowed Carter to hold himself out as agent, and where a person holds himself out as principal, with the consent of the owner, third persons who deal with him *bona fide*, are entitled to all the rights which they would have, if he were the real principal.—17 Pick. 159; 7 Beav. 506; Story on Agency, §§ 390, 443, 444, 419, 420.

In all cases of delegated authority, if the agent acts without authority, and the principal subsequently ratifies the act, he is bound by it, whether it be for his detriment or advantage; and whether it be founded upon a tort, or upon a contract.—Story on Agency, §§ 242, 244, 249, 253 and 256. Whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it.—Herman on Estoppel, § 484; 49 Ala. 186. Robinson should have used all due diligence to notify Moore & Co. of the wrongful act of Carter, and his failure to do so as soon as he reasonably could, estops him from asserting that Carter exceeded his authority.

L. P. WALKER, *contra.*—The testimony of Chambers was legal evidence; he only states the manner in which he gave the notice. It does not appear how the response was made, and it may have been in writing. The mere fact that Robinson authorized Carter to ship the cotton, did not estop him from setting up that the cotton was his. Mere possession by Carter did not give person a right to treat him as the owner to the detriment of Robinson. There must be something more than a mere delivery to an agent to estop a principal from claiming his property in the hands of one securing possession through the agent.—See 46 Ala. 483; 3 Otto, 575; *Leigh Bros. v. M. & O. R. R. Co*, 58 Ala. 191. These cases are decisive of every question presented by the record, except the exceptions to the admissions of Chamber's testimony. They show conclusively that Robinson had done nothing which would estop him from asserting or prevent a successful assertion of his ownership of the cotton.

STONE, J.—The appellants were cotton commission merchants, having two places of business, one in New York, and one in Cincinnati They did business in each city in the same firm name, Robert Moore & Co., composed of the same

partners. The appellee, Robinson, owned seventeen bales of cotton, which were at the Scottsboro depot, on the Memphis and Charleston railroad, for shipment. Carter was a cotton buyer, operating at Scottsboro, and had been engaged in buying cotton, and shipping it to the Cincinnati house for sale. He was indebted to them for a balance on the transactions of the preceding year. Robinson determined to ship his cotton to New York for sale, of which determination Carter had notice. At his (Carter's) request, Robinson consented to allow him (Carter) to ship the cotton, consigned to Robert Moore & Co., New York, Carter giving as a reason for the request that it would benefit him. . On the 3d day of May, 1871, Carter shipped the cotton, in his own name, consigned to Robert Moore & Co., New York. On the same day Carter took the train for Nashville, Tennessee, and the record fails to show him in Alabama again until the 17th of May, 1871. On the 4th day of May, Carter, producing the railroad's receipt, or bill of lading, obtained from Humphrey at Huntsville, agent of Robert Moore & Co., of Cincinnati, one thousand dollars as an advance on the cotton shipped, and delivered the bill of lading to him (Humphrey). On the 15th May, Robert Moore & Co., of Cincinnati, cashed Carter's draft on them, drawn after the shipment of the cotton, for the sum of four hundred and seven dollars. These two payments exceed the value of the cotton. Robinson testified that the consent he gave Carter to ship the cotton, was to ship it for him (Robinson), and that he gave no consent to have it shipped in the name of Carter. He further testified that on the 13th May, 1871, he procured a telegram to be sent to a mercantile firm in New York, requesting such firm to notify Robert Moore & Co., that the seventeen bales of cotton so shipped by Carter in his own name, belonged to him (Robinson). On the 17th May, Robinson, Carter and Humphrey had an interview, at which he again claimed the cotton, and inquired of Carter by what authority he had obtained an advance on his (Robinson's) cotton. Robinson testified that Carter's reply to this was, that he did not obtain the advance on the cotton, but on general account. Other witnesses testified that the advance was obtained on the strength of the cotton shipped.

A question is raised, and was controverted in the Circuit Court, as to the diligence Robinson employed in disavowing Carter's ownership of the cotton, and in disclaiming his authority to ship it in his name. For the purpose of proving that Robert Moore & Co., of New York, received notice of the telegram sent to the mercantile house, May 13th, 1871, an employe of said mercantile house of New York was exam-

ined by deposition, and the defendants in the Circuit Court moved to suppress certain answers of the witness, first, because the answers were not responsive to the interrogatories, and, second, because they are shown to be only hearsay. The first of these objections cannot be taken after the trial is entered upon, because, if sustained, the deposition may be retaken, and the facts proved, lawfully.—*McCreary v. Turk*, 29 Ala. 244. To be available, this objection must be taken before the trial is begun. The second objection may be made on the trial, because, if the testimony is in itself illegal, it cannot be so taken as to legalize it. The witness testified that when the telegram of May 13th was received, it was sent by the hands of the messenger of the house to which it was addressed, to Robert Moore & Co.; and the witness was allowed to testify to what the messenger said when he returned from Robert Moore & Co., to the effect that he had delivered the telegram to them, and what they said in reply. All this was hearsay, and should have been suppressed on the motion of defendants. This ruling applies to the answers to the 6th, 8th and 10th direct interrogatories, and to all other answers substantially the same. This ruling necessarily works a reversal of the judgment of the Circuit Court. There is presented, however, the main question of merit in the cause, which will come again before the court on a second trial. We feel it our duty to consider this.

It is among the undisputed facts in this case, that the seventeen bales of cotton, for the proceeds of which this suit was brought, was the property of appellee, Robinson, and was not the property of Carter; and that Robinson authorized Carter to ship the cotton to Robert Moore & Co., New York. The disputed questions are, did this mere authority to ship authorize Carter to ship it in his own name? Did Robinson give him authority to ship in his own name? And if he did not, did he ratify the unauthorized act of Carter, when informed that he (Carter) had shipped in his own name? Robinson testified that Carter requested of him the privilege of shipping the cotton, stating it would benefit him (Carter); that he gave him authority to ship it for him (Robinson), but gave him no authority to ship it in his (Carter's) name. This is all the testimony on this question. We feel justified in affirming that there is no testimony in the record of any express authority given by Robinson that the cotton be shipped in Carter's name; and we do not understand appellants as contending there is any such evidence. This narrows the contest to the inquiry, did the authority to Carter to ship for Robinson, authorize him to ship in his own name, and justify third persons in dealing with the cotton as Carter's? Or, do

the facts and circumstances prove that Robinson, on being informed that Carter had shipped in his own name, ratified the act?

Mr. Benjamin, in his excellent book on sales of personal property, says: "In general, no man can sell goods, and convey a valid title to them, unless he be the owner, or law-fully represent the owner. *Nemo dat, quod non habit.*"—Benj. on Sales, § 6. He mentions several exceptions to this rule, some of which do not apply to this country; as, market overt, sections 7, 8, 9; sales governed by the factor's act, 6 Geo. 4, ch. 94, s. 2, amended 5 and 6 Vict. c. 39, sec. 19. In 1 Chit. on Con. 11 Amer. Ed. page 534, is the following language: "It is said, however, that if the real owner of goods suffer another to have possession thereof, or of those documents which are the *indicia* of property therein, thereby enabling him to hold himself forth to the world as having, not the possession only, but the property, a sale by such person to a purchaser without notice, will bind the true owner. But probably this proposition ought to be limited to cases where the person who had the possession of the goods, was one who, from the nature of his business, might be taken, *prima facie*, to have had the right to sell." Benjamin, commenting on this language, says, sections 19, 20: "This limitation, suggested by Mr. Chitty to the rule propounded in the *dicta* of the two learned judges, was approved by the barons of the exchequer in *Higgans v. Burton*, and when thus limited, the principle does not differ substantially from the provisions of the factor's act, as amended by the 5 & 6 Vict. c. 39. But the cases recently decided under the factor's act leave this statement open to grave doubt, and show the extreme difficulty of defining the subject matter to which it applies."

In *Covill v. Hill*, 4 Denio, 323, it was said: "It is a principle of the common law, which has but few exceptions, that a man cannot be divested of his property without his consent. And although possession is one of the most usual evidences of title to personal chattels, yet, as a general rule, mere possession will not enable a man to transfer a better title than he has himself, or than he has been authorized by the owner to grant. Exceptions in favor of trade are allowed in the case of money and negotiable instruments. But as to other personal chattels, the mere possession, by whatever means it may have been acquired, if there be no other evidence of property, or authority to sell from the true owner, will not enable the seller to give a good title." In that case, plaintiff had placed a large lot of lumber on the banks of the canal, pursuant to an executory agreement with one Potter, to sell him the lumber; but Potter had not complied, and the

title remained in the plaintiff. A second agreement was then made, to the effect that Potter was, " on that day, to pay plaintiff two dollars per thousand on the lumber, and *the plaintiff should hold the title and possession of the lumber until he should be paid the full amount of the purchase-money*, with interest from the first day of April preceding. It was further agreed that Potter, *as the agent and in the name of the plaintiff*, should ship the lumber to the defendants at Albany, Potter paying freight, to be sold by the defendants *as the property of the plaintiff*, and the avails thereof, to the amount of the residue of the purchase-money and interest, to be accounted for and paid by the defendants to the plaintiff. On the next day, Potter, through his son, shipped the lumber to the defendants, but, in violation of the agreement, failed to notify the consignees that the lumber was shipped on account of plaintiff, while he drew on the consignees for a sum equal to four dollars per thousand feet of lumber shipped. This draft was in the name of Potter, and every thing communicated to defendants was calculated to convince them the shipment was on Potter's account. The consignees did not know Covill, the plaintiff, in the transaction. They paid the draft in ignorance of Covill's rights, and the question was, whether Covill or the consignees should lose the money, Potter having failed to pay Covill for the lumber. From 1828 to 1842 Potter had been engaged in the lumber business, which amounted to forty or fifty thousand dollars a year. The lumber in question was shipped from his yard in Elmira. He both manufactured and purchased lumber; and uniformly shipped lumber to be sold on his own account. He was, during that period, in the habit of shipping lumber to the defendants, who were lumber dealers in Albany, to be sold on his account. The lumber so consigned to defendants amounted to from five to fifty thousand dollars per year. The course of business was for Potter to forward lumber to the defendants, and make drafts upon them on account of it. At the time of the receipt of the lumber in question, he owed the defendants more than five thousand dollars, above all property of his in their hands. The defendants claimed that they were innocent purchasers without notice, and defended on that ground. The defense was held invalid, the court remarking: " The transaction amounted to nothing more than a bailment of the lumber to Potter for the purpose of forwarding it to the defendants to be sold, with an interest in the bailee as to all which the property might bring beyond the specified sum of $8.25 per thousand feet. Potter had no more power over the property as against the plaintiff, than though he had received it as a common carrier for hire, and

[Moore & Co. v. Robinson.]

without any other interest; nor did the plaintiff do any thing which was more likely to mislead third persons than though he had delivered the property to Potter as such common carrier. And it hardly need be said, that a mere bailee can neither give a good title nor create a valid lien as against the true owner."

In the case we have in hand, according to the testimony of the only witness who testifies about this part of the transaction, the authority given to Carter was to ship the cotton to New York for Robinson. In this view, Carter only became Robinson's agent to ship, and to ship for him. And if Robinson gave him no authority to ship in his own name, he should, as other agents, have executed the power and authority in the name of his principal, not in his own name. Violating his duty, on this hypothesis, and doing in his own name that which he should have done in the name of Robinson, could not, without the concurrence or ratification of Robinson, enlarge his power to charge, encumber, or sell the cotton. Being but an agent to ship, a purchaser from him could acquire no greater title or interest than he had himself. Cotton is only a common chattel, and does not stand in the category of commercial paper. According to this hypothesis, the defense resting on the face of the railroad's bill of lading or manifest, is weaker than that relied on, and ruled insufficient, in the case of *Covill v. Hill*, 4 Denio, *supra*. To the same effect are *Andrew v. Dieterich*, 14 Wend. 31; *Salters v. Everett*, 20 Wend. 267; *McMahon v. Sloan*, 12 Penn. St. 229. *Pickering v. Bush*, 15 East, 38 is not opposed to this view. These cases all rest on the doctrine that while possession is *prima facie* evidence of ownership of every species of personal property, yet, whoever deals with such possession upon the mere evidence which possession affords, takes upon himself the risk that there is another and true owner, and the burden of proving, should there be such better owner, that he had, by his own act, authorized the sale, ratified it, or furnished evidence of the seller's authority to dispose of the goods, other than his mere possession, although that possession, as possession, was permissive. So, in the case of the Idaho, 3 Otto, 575, the court say: "It is hardly necessary to say that the title of the true owner of personal property cannot be impaired by the unauthorized acts of one not the owner. Taking possession of the property, shipping it, obtaining bills of lading from the carriers, indorsing away the bills of lading, or even selling the property and obtaining a full price for it, can have no effect upon the right of the owner. Even a *bona fide* purchaser obtains no right by a purchase from one who is not the owner, or not

(35)

authorized to sell."—*Bott v. McCoy*, 20 Ala. 578; Sto. on Agency, § 225. As a general rule, the title of property, like the flow of a stream, cannot rise higher than its source; and so, one not the owner, and not having authority therefor, conferred by the owner, cannot sell, or make a valid pledge of property.—1 Smith Leading Cases, Part 2, pages 1192 *et seq.*, Seventh Am. Ed. A different rule prevails if the seller have a title, even though acquired by fraud. A *bona fide* purchaser for value from such fraudulent holder of the title, without notice of the fraud, will be protected.—*Lickbarrow v. Mason*, and notes, 1 Smith Leading Cases, 2d Part, pages 1147, 1190 *et seq.*; *Leigh Bros. v. Mobile & Ohio Railroad*, 58 Ala. 165; *Voss v. Robertson*, 46 Ala. 483.

Ratification of unauthorized acts, given after knowledge is brought home to the person for whom the act purports to have been done, validates the act to the same extent as if it had been previously authorized.—*Bott v. McCoy, supra*; Sto. on Agency, § 239, and notes; 1 Brick. Dig. 59. But, ratification and acquiescence are not synonyms.—See the dictionaries. The latter is but testimony to be considered in determining the *factum vel non* of the former. Nor is there anything of estoppel in the mere act of silence or acquiescence. It is only when such silence or acquiescence becomes the basis, or authority on which another parts with something valuable, or incurs a liability, that the doctrine applies. The doctrine is that in such case, the party is estopped to assert the truth, because its assertion would work a fraud on him whose conduct had been influenced by such silence or acquiescence.—*Miller v. Hampton*, 27 Ala. 342, and authorities cited.

In the general charge is the following language, which was excepted to: "The case read by counsel for plaintiff in 46th Alabama [*Voss v. Robinson*] is so much like this in its facts," &c. This being in the general charge, we must presume it was given by the court without the request of either party. In this the Circuit Court erred. By assuming, as the charge did, what were the facts in this case, it was a charge on the effect of the evidence.—Code of 1876, section 3028; *Beasly v. The State*, 50 Ala. 149. It is subject to criticism on another ground. Its inevitable effect was, to lay before the jury that other case, which they would probably compare with the one on trial, and in this way the jury would be liable to be misled by such extraneous issues. The third charge asked require of Robinson too rigid a rule of diligence in giving notice. The matter of diligence in giving notice in this case, is only material as shedding some light on the

question of ratification of the act of shipment in Carter's name. There is no principle of estoppel in it.

Plea No. 2 contains no averment that Robinson authorized Carter to ship the cotton, either in his own name or otherwise. It leaves undenied and unanswered the averment in the complaint that the seventeen bales of cotton were the property of plaintiff. Its averment is that the cotton was " consigned to them through their agent as the property of one William J. Carter," and that they made the advance of one thousand dollars, and honored the draft of four hundred and seven dollars, on the faith of the bill of lading, and of said cotton; and then avers they have a lien on said cotton, which they acquired *bona fide*. It does not aver that when they made the advance, and honored the draft, they were ignorant that the cotton was Robinson's. There was no demurrer to this plea. Under the issue formed, and on this plea, the fourth charge asked should have been given.—*Mudge v. Treat*, 57 Ala. 1. The fifth charge asked was rightly refused. Acquiescence is not necessarily ratification, though evidence tending to prove it. Whether he acquiesced, and whether he ratified the shipment of the cotton in Carter's name, was a question for the jury under all the evidence. To acquiesce is to forbear opposition or complaint. To ratify is to make valid, to confirm. We frequently acquiesce, without approving.

For the errors pointed out, the judgment of the Circuit Court is reversed and the cause remanded.

BRICKELL, C. J., not sitting, having been of counsel.