(75 South. 570)

## PEOPLE'S BANK & TRUST CO. v. WALTHALL. (2 Div. 584.)

(Supreme Court of Alabama. Feb. 8, 1917. Rehearing Denied May 24, 1917.)

1. CUSTOMS AND USAGES ⊚⇒17—APPLICATION —VARYING TERMS OF CONTRACT.

Where no uncertainty existed in a contract, except as to which of two theories the parties had adopted, evidence of a custom contradicting its express stipulations was inadmissible.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. § 34; Evidence, Cent. Dig. § 1946.]

2. SALES ⊚⇒52(2)—EXTRINSIC EVIDENCE TO EXPLAIN AMBIGUOUS CONTRACT.

Extrinsic evidence was admissible to show whether the parties intended an absolute sale of cotton or an advance pending completion of sale.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 124, 125, 127, 128.]

3. SALES ⊚⇒52(2)—EXTRINSIC EVIDENCE TO EXPLAIN AMBIGUOUS CONTRACT—LIMITATION ON AGENT'S AUTHORITY.

A telephone conversation between plaintiff and his agent as to limitation of latter's power

was admissible in evidence as showing nature of contract entered into by the agent with purchaser of cotton.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 124, 125, 127, 128.]

4. PRINCIPAL AND AGENT ☞116(1)—UNDISCLOSED LIMITATION ON AGENT'S POWER—EFFECT ON INNOCENT PURCHASER.

Unless defendant knew of limitation placed on power of plaintiff's agent to transfer a bill of lading, such limitation would not affect defendant's rights as an innocent purchaser.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 377.]

5. PRINCIPAL AND AGENT ☞137(1)—SALE BY AGENT IN EXCESS OF AUTHORITY—BONA FIDE PURCHASER—PROTECTION.

Where plaintiff's agent under authority to sell cotton transferred the bill of lading under a contract in excess of his authority, a condition arose whereby an innocent purchaser from the transferee suffering through a reliance on such bill of lading as indicia of ownership would be protected.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 492, 494.]

6. SALES ☞162—SYMBOLIC DELIVERY—BILL OF LADING.

Delivery of a bill of lading was a symbolic delivery of the cotton for which it was issued.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 376, 381–385.]

7. ESTOPPEL ☞75—INDICIA OF OWNERSHIP—BONA FIDE PURCHASERS—TRANSFER OF TITLE.

One exception to general rule that no one can transfer a better title than he possesses exists where the owner has intrusted another with possession, indicia of ownership, and apparent authority to sell, in which case an innocent purchaser will be protected and the sale prevail over the rights of the owner.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 192–195.]

8. PRINCIPAL AND AGENT ☞190(3)—AGENT EXCEEDING AUTHORITY—BONA FIDE PURCHASER—SUFFICIENCY OF EVIDENCE.

Evidence held insufficient to show that a bank under agreement with cotton buyers to extend credit and accept bills of lading suffered in any respect by relying on bill of lading transferred in excess of authority by plaintiff's agent, entitling the bank to protection as a bona fide purchaser.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 720.]

9. CARRIERS ☞58—BILL OF LADING—BANK'S LIEN ON DEBTOR'S PROPERTY.

Where cotton was not sold absolutely to a debtor, who transferred the bill of lading to a bank, such property was not subject to the bank's lien.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190.]

10. TRIAL ☞253(5)—INSTRUCTION EXCLUDING ISSUE.

Instruction regarding bank's lien upon debtor's property was properly refused, where it ignored the issue as to whether property belonged to the debtor absolutely.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 617.]

11. PAYMENT ☞21—BY CHECK.

A check received in payment of a debt, or for property sold, or as a loan, is not the same as cash unless it is so accepted by party receiving it.

[Ed. Note.—For other cases, see Payment, Cent. Dig. § 86.]

12. SALES ☞191—TRANSFER OF TITLE—PAYMENT—EFFECT OF DISHONOR OF CHECK.

Where a sale is made for cash on delivery and buyer gives seller a check which is dishonored, when presented in a reasonable time, title does not pass, and the seller is entitled to recover the property from any one not a bona fide purchaser.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 505.]

13. SALES ☞238—BONA FIDE PURCHASER—WHAT CONSTITUTES.

Unless defendant purchased, loaned money on, or parted with value for, cotton involved in suit, it would not be an innocent holder, nor entitled to any greater rights than the firm from which it received the cotton.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 687.]

Appeal from City Court of Selma; J. W. Mabry, Judge.

Detinue by T. A. Walthall, Jr., against the People's Bank & Trust Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The facts sufficiently appear.

The following charges complained of were given for plaintiff:

(3) I charge you that a check received in payment of a debt, or for property sold, or as a loan, is not the same as cash unless it is so accepted and treated by the party receiving it, and, unless it is so received and treated, it, in law, is not a payment.

(4) If a trade is made between parties for cash on delivery and the buyer gives the seller the check which is dishonored by the bank upon which it is drawn, when presented in a reasonable time, the title does not pass from the seller to the buyer, and the seller is entitled to recover the property from the buyer or any one not an innocent purchaser or holder for value.

(6) Unless defendant purchased or loaned money on the cotton involved in this suit, they would not be bona fide holders of said cotton.

(8) If defendant did not part with any value for the cotton involved in this suit, it would not be an innocent holder of the cotton, and would have no better right to the cotton than Knight, Yancey & Co. would have had.

(9) If you believe from the evidence that plaintiff claimed the cotton, and Mr. Walthall sold the cotton for cash and not on credit, and Knight, Yancey & Co. agreed to pay for the cotton $1,000 on delivery of the bill of lading, and the balance when the cotton was classed and reweighed, and that Knight, Yancey & Co. paid nothing for the cotton except the check which was afterwards dishonored, then plaintiff was entitled to recover the cotton unless defendant is the innocent purchaser for value as defined by the court.

(11) I charge you that where goods or cotton is sold for cash, and a check is given by the buyer to the seller, such check is not payment until actually paid, and, if the check is dishonored, the seller can recover back the goods or cotton from the buyer or his assignee not an innocent holder.

Keith & Wilkinson, of Selma, for appellant. Pettus, Fuller & Kapsley, of Selma, for appellee.

McCLELLAN, J. Detinue, instituted by appellee against appellant (substituted defendant) to recover 16 bales of cotton. Appellee lived near Newbern, 40 miles from Selma. On April 16, 1910, he was the un-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

qualified owner of the cotton here involved. He had shipped it to Selma, consigned to himself. On that day he delivered the bill of lading to his father, T. A. Walthall, Sr., with direction to sell the cotton if a satisfactory price could be obtained. The father came to Selma and, in accordance with appellee's direction, entered upon negotiations to effect a sale of this cotton to Knight, Yancey & Co., through its agent C. A. Patterson. So far as the plaintiff was concerned, his right to recover in the court below depended, necessarily, upon an affirmative finding that the arrangement, the agreement, effected by and between Patterson and plaintiff's agent, his father, operated to bring into existence only an executory contract of sale or of loan or advancement with the cotton as a collateral security, and did not operate to pass the title to the cotton to Patterson's principal, as was the legal result if the agreement was not of the character just stated. Consistent with the court's duty under the conflicting evidence and under the adverse inferences afforded by the evidence, it submitted the mentioned issue to the jury. Of this particular action of the court there is no real ground for criticism. If the jury had found that the title passed to Patterson's principal, that would, of course, have been the end of plaintiff's case. However, the jury upheld the plaintiff's theory; thus subjecting the judgment's propriety to these two tests: One, whether in the admission or exclusion of evidence bearing on the issues indicated there was error to the prejudice of the defendant, appellant: the other, whether the court fell into error (as assigned here) in respect of its action touching the defendant's claim of protection as an innocent purchaser, for value and without notice, of the cotton sued for, from Knight, Yancey & Co.

[1] Over the objection of the defendant, the court permitted the plaintiff to show that in Selma and neighboring cotton markets the custom was and had been for a great period never to sell cotton on a credit. The issue, the decision of which would determine whether the title to the cotton passed to Knight, Yancey & Co., was clear-cut. It was affirmed by the plaintiff that his agent, by his direction, expressly denied any effect to the dealing to then divest the plaintiff's title to the cotton; and, on the other hand, the defendant affirmed that plaintiff's agent made an absolute sale of the cotton to the agent of Knight, Yancey & Co. through which company the defendant traced, in one aspect, its rights in the premises. The intention of the parties, with respect to the contract into which they entered, was uncertain only to the extent the stated theories made it so; and that uncertainty was one which the acceptance of one or other of the stated theories could and would entirely remove. In this state of the issue, and in accordance with the general doctrine governing the availability of parol evidence of custom

or usage to ascertain the terms of contracts and the intention and obligations of contractors, the court erred in overruling the defendant's objection to testimony relating to the stated custom. Evidence of a custom cannot be received to alter or to contradict the express stipulations of a contract. Buyck v. Schwing, 100 Ala. 355, 14 South. 48; Barlow v. Lambert, 28 Ala. 704, 65 Am. Dec. 374. In this instance, whether one or the other of the respectively asserted theories was accepted, the office and effect of the custom admitted in evidence was to contradict that which the parties agreed to, in one event or the other. If the dealing between these parties had been less particular— whether one or the other of the opposing theories is taken as the true result from the facts and circumstances under the law— there might have been ground on which to rest a conclusion that evidence of the custom asserted was admissible. 9 Ency. of Ev. pp. 360, 361; Jones on Ev. (2d Ed.) § 457, and note 26. The facts and circumstances involved in the decision in Loval v. Wolf, 179 Ala. 505, 60 South. 298, readily disclose that its ruling on the admissibility of evidence of custom is not applicable to the question as presented in the case at bar.

[2-4] Clearly, there was no error in receiving in evidence the matter assigned for error under assignments 2, 3, 5, 6, 7, and 8. The matters of evidence to which these assignments relate all had reference to and bearing upon the inquiry whether there was an absolute sale of the cotton or an executory agreement to sell it, or to get an advance upon it pending the final act of completing the sale and passing the title. The limitation, if any, plaintiff put upon his agent in a talk over the telephone that day, was a circumstance having bearing upon the inquiry, what agreement the plaintiff's agent did, in fact, make; and so, notwithstanding it did not have the effect to conclude, in any degree, the defendant in respect of the defendant's claim to the protection accorded an innocent purchaser, for value and without notice, unless it was further proven that the defendant knew of the limitation the plaintiff had put upon the power of his agent in the premises.

[5, 6] Coming to the defense, viz. that defendant is entitled to be protected as an innocent purchaser of the cotton from Knight, Yancey & Co., for value and without notice, it is impracticable to recite, even summarily, the evidence bearing upon this issue. We must be content to state conclusions and legal effects resulting therefrom. When plaintiff's agent acted under authority at least adequate to assign and deliver the bill of lading for this cotton to the agent of Knight, Yancey & Co., and to receive in return that company's check for $1,000, a condition was created out of which might arise a right to claim this protection by one regularly, innocently succeeding, in good faith, to the pos-

session of this bill of lading through the payment of value thereof or through a change of its position for the worse in some material respect. The delivery of the bill of lading, by plaintiff's agent, to the agent of Knight, Yancey & Co., was a symbolic delivery of the cotton for which it was issued. Commercial Bank v. Hurt, 99 Ala. 130, 140, 12 South. 568, 19 L. R. A. 701, 42 Am. St. Rep. 38; Merchants' Bank v. Bales, 148 Ala. 279, 41 South. 516. The possession of the cotton, through this token, was not tortious, not wrongful; nor did this symbolic delivery of the cotton involve any violation by the plaintiff's agent of his authority to assign and deliver the bill of lading and to receive a check in consequence, or any excession by such agent of the authority conferred on him by his principal to assign and deliver the bill of lading and to receive a check in consequence. This fact serves to distinguish the case under consideration from that presented and decided in Moore v. Robinson, 62 Ala. 537, where it was held that an agent, who exceeds or violates his restricted authority by shipping in his own name chattels which his principal had directed him to ship on bill of lading in the principal's name, is powerless to transmit to another—however innocently he may part with value therefor—a right or title greater than the agent had, superior to that of the true owner, the agent's principal; whereas, in this case, the agent was empowered to do the acts he did, viz. effect the symbolic delivery of the cotton through the transfer of the bill of lading and receive in return the evidence—a check—of an authoritative dealing with the property symbolized by the bill of lading.

[7] If the defendant altered its position to its disadvantage because of the indicia of ownership of the cotton given by the authorized act of plaintiff's agent, then the doctrine thus stated in Leigh v. M. & O. R. R. Co., 58 Ala. at page 178, is due to be observed and applied:

"Another class of cases forming an exception to the general rule [i. e., 'that no one can transfer to another a better title than he has himself'] is when the owner by his own act or consent, has given another such evidence of the right to sell, or otherwise dispose of his goods, as according to the customs of trade, or the common understanding of the world, usually accompanied the authority of sale, or of disposition. Then, if the person intrusted with the possession of the goods, and with the indicia of ownership, or of authority to sell, or otherwise dispose of them, in violation of his duty to the owner, sells to an innocent purchaser, the sale will prevail against the right of the owner. He ought to bear the loss which may follow from his misplaced confidence, rather than the bona fide purchaser who relied on the evidence of property, or of authority with which he clothed the possessor." Bent v. Jenkins, 112 Ala. 485, 20 South. 655.

[8] Here, the bill of lading was authoritatively transferred to Knight, Yancey & Co., and a check given and in consequence thereof, both of which facts were within or were brought to the knowledge of the defendant; thereby, in our opinion, justifying the defendant in relying and acting upon the assumption that Knight, Yancy & Co. had the right to dispose of the cotton, thus symbolically in the possession of that company, a concern that was then largely engaged in buying and selling cotton in the Selma market. The course of dealing and arrangement in effect on April 16, 1910, between Knight, Yancy & Co. and the defendant bank, was that the bank should furnish the company, a large cotton dealer in that section, whatever funds it needed to buy cotton and to defray the incidental expenses of its business in that territory; the cotton company giving the bank its "pro forma" for a sum sufficient to cover a margin of $10 a bale on the amount of cotton usually to be expected to be on hand at any one time. The cotton company would purchase the cotton, giving the seller a check on its account—credit thus created,—on the defendant bank for the purchase price. If the cotton was covered by an outstanding bill of lading when purchased or was stored with a warehouseman, it was the duty of the cotton company to put the bill of lading or the warehouse receipts representing the cotton so purchased in a box in the bank designated for the purpose of affording the bank the possession of these symbols or as security to indemnify the bank in the premises. The cotton company was at liberty to ship the cotton represented by these documents in the box mentioned; but its obligation and the practice was to give the bank a draft with the new bill of lading attached to cover the cotton so shipped by the company, whereupon the company was authorized to take from the box bills of lading or warehouse receipts or both equivalent to the number of bales of cotton, of the same grade, as that listed in the new bill of lading attached to the draft so given by the cotton company to the bank. The effect of this process was to toll the cotton company's indebtedness to the bank to the extent of the net amount of the draft, which was credited to the account of the cotton company.

On April 16, 1910, a check for $1,000,—something over $200 less than the market price of the cotton in question—was delivered to the plaintiff's agent by the agent of Knight, Yancey & Co. The bill of lading was delivered to the agent of the cotton company. The plaintiff's agent presented the check to the defendant bank and made the limited offer to take exchange, at par, for the amount of the check. The bank offered to pay the check in money; the plaintiff's agent being unwilling to pay the premium demanded by the bank for the exchange the plaintiff's agent desired. The check was delivered to the plaintiff by his agent, was committed on the next day for collection to the plaintiff's home bank, was in due course again presented to the drawee bank for payment, and its payment was finally refused, before April 20, 1910, the date on

which Knight, Yancey & Co. failed, on the ground of insufficient funds to pay the check. The amount to the credit of Knight, Yancey & Co. after April 20, 1910, on the books of the bank, was made up of two drafts which had been deposited by the cotton company as cash, according to the practice, on the 14th and 16th days of April, 1910, respectively; and both of these drafts went to protest. It does not appear that either of them were ever paid. The bill of lading transferred by plaintiff's agent to Knight, Yancey & Co. shortly after April 16th was surrendered by the bank, and the Oates Compress Company issued to the bank receipts for the cotton involved in this suit. When the bank was advised on April 18, 1910, that the drafts of date April 14 and 16, 1910, had gone to protest, it thereupon applied the balance then due Knight, Yancey & Co. to the partial payment of the general indebtedness of the cotton company to the bank and held the draft as a debit against the company.

Under the circumstances disclosed by this record, we have been unable to discover wherein the defendant bank parted with any value or was put, by reason of its dealing with Knight, Yancey & Co., in a position of either disadvantage or worse plight; and this for what seems to us to be the all-sufficient reason that the bank has not been shown to have paid for the cotton, directly or indirectly, or assumed any irrevocable obligation to pay therefor. If we assume that this particular 16 bales of cotton was covered by the bill of lading attached to the draft of April 16, 1910, the bank, so far as this cotton was concerned, placed to the credit of Knight, Yancey & Co. on its books a sum equivalent to the value symbolized by the Walthall bill of lading then in the depository box in which such securities were put by Knight, Yancey & Co. for the bank; there being, as appears, no surrender of any value of any character by the bank either to Knight, Yancey & Co. or to any one else, and no irrevocable obligation assumed by the bank in consequence of this mere bookkeeping change with respect to the cotton as symbolized by the bill of lading. One who has neither parted with any value nor assumed a worse position than he theretofore occupied cannot be entitled to the protection ordinarily accorded a bona fide purchaser, for value and without notice. Thames v. Rembert, 63 Ala. 561.

It results from these considerations that on the evidence in this record the defence of bona fide purchaser, for value and without notice, was not sustained; and no error, prejudicial to the appellant, could be predicated of the court's action in giving or refusing instructions bearing upon that issue.

[9, 10] Some of the charges requested by and refused to the defendant sought to invoke in its behalf the lien a bank has, in proper cases, upon the moneys and properties of a customer who is in its debt. If the cotton symbolized by the Walthall bill of lading had not been sold absolutely to Knight, Yancey & Co. by plaintiff's agent, then the cotton was not the property of Knight, Yancey & Co.; and, not being the bank's debtor's property, could not be the subject of the bank's lien. These instructions do not efficiently hypothesize this essential fact before the banker's lien could attach to the cotton itself.

[11–13] The trial court committed no error in giving, at plaintiff's instance, charges 3, 4, 6, 8, 9, and 11.

For the error indicated, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.