# Bass, Heard & Howle *v.* International Harvester Company of America.

## *Trover.*

(Decided Nov. 15, 1910.    Rehearing denied Dec. 22, 1910.
53 South. 1014.)

1. *Sales; Conditional Sales.*—Where a seller retains title in the thing sold until the payment of the purchase money the transaction is a conditional sale.

2. *Same; Effect of Conditions on Third Person; Bona Fide Purchaser.*—Where a wagon manufacturing company sold wagons to a partnership to be resold in the usual course of business, and reserved the title to the wagon until the purchase price was paid, and while the wagons were in the possession of the mercantile company, the same was dissolved, and one of the partners succeeded to the business and retained the wagons, and subsequently a corporation was formed, and the partner retaining the business took stock in such corporation and transferred the wagons to the corporation in payment of his stock, and the corporation had no notice at the time

of any claim by the manufacturing company to the wagons, and subsequently sold some of the wagons in the usual course of trade, the wagon manufacturing company could not recover of the corporation in trover for the wagons sold.

APPEAL from Calhoun Circuit Court.

Heard before Hon. JOHN PELHAM.

Trover by the International Harvester Company of America against Bass, Heard & Howle, a corporation. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

The International Harvester Company manufactures the Weber wagons and sells the same for resale to merchants and dealers in vehicles, etc. The Shelnut Mercantile Company, a partnership composed of Bryant Shelnut and Ewell Howle, doing a* general mercantile business in Anniston, Ala., gave and signed a written order to the International Harvester Company, dated October 20, 1906, for 30 Weber wagons. The said wagons were shipped to the Shelnut Mercantile Company, and were received and placed in their stock of goods carried by said company for sale to its customers, and at the time that the seller shipped the wagons he knew that the Mercantile Company was purchasing them for resale. The company sold two of the wagons and on the 28th day of January, 1907, the Shelnut Mercantile Company was dissolved by Bryant Shelnut selling to his partner, Ewell Howle, for a cash consideration, all his interest in the business, and it was then conducted by Howle as the Howle Mercantile Company, and on February 4, 1907, Bass, Heard & Howle. a corporation, was formed, and in payment of his subscription thereto Howle conveyed to the corporation all the stock of goods, wares, merchandise, etc., which he had at the time, and which had formerly belonged to the Shelnut Manufacturing Company, including 27 or 28 of the wagons that remained unsold. It is admitted

[Bass, Heard & Howle v. International Harvester Co. of America.]

that Howle did not disclose to the corporation that the International Harvester Company had any claims to the wagons, and that the defendant corporation had no notice or knowledge of the same at the time of Howle's conveyance. Certificates of stock were issued to each holder thereof, upon payment of the amount due thereon. Howle parted with his stock before any notice came to the corporation of plaintiff's alleged claim to the wagons. This notice came through a demand made on the corporation by one Luther McCoy, an agent of the International Harvester Company, and at the time demand was made 18 of the wagons were delivered to the said agent; the other 9 or 10 having been sold to customers of the defendant corporation in the usual course of trade, without notice of plaintiff's claim. Judgment was rendered for the plaintiff for the 10 wagons which had been sold.

The following is the contract of sale: "Anniston, Ala., Oct. 20, 1906. International Harvester Company of America, Chicago, Ill.—Gentlemen: Please ship to us on or about at early date as possible, or as soon as possible thereafter, on conditions named herein and hereon, the following goods at prices specified herein: (Then follows description of property, conditions of shipment, and other matter not necessary to be here set out, and the following:) Should we fail to give you settlement as herein provided for, or fail to pay at maturity any obligations due you, or should we become or apparently become financially embarrassed, all our indebtedness to you shall immediately become due and subject to sight draft, and if necessary to be put in hands of attorney for collection or settlement, we will pay all expenses and fees incurred by your so doing. The title and ownership of all goods you ship us, and their proceeds, of whatsoever nature, shall remain in you until you have been fully paid in money."

[Bass, Heard & Howle v. International Harvester Co. of America.]

their proceeds, of whatsoever nature, shall remain in you until you have been fully paid in money."

LAPSLEY & ARNOLD, for appellant. The court erred in overruling defendant's demurrer to count 1 of the complaint.—*I. C. N. Co. v. Hughes,* 144 Ala. 608; *A. G. S. v. Shahan,* 116 Ala. 302; *L. & N. v. Cofer,* 110 Ala. 491; *S. A. & M. Ry. Co. v. Buford,* 106 Ala. 303. The court erred in declining to strike amended counts 5 to 28.—Sec. 143, Const. 1901; Sec. 3255, Code of Alabama. The court erred in sustaining demurrer to defendant's pleas 4 and 5.—*Dowdell v. Empire F. & L. Co.,* 84 Ala. 316; Sec. 3386, Code of Alabama. On the same authority, the court erred in admitting the contract in evidence. The court below erred in rendering judgment for the plaintiff on the evidence in the case. —*Frinkle v. Hudson,* 82 Ala. 158; *Dowdell v. E. F. & L. Co. supra; Bent v. Jenkins,* 112 Ala. 485; 19 South. 232; 58 Am. Rep. 382; *Leigh's Case* 58 Ala. 165.

H. D. MCCARTY, E. H. HANNA, and PHIL H. STERN, for appellee. The court did not err in overruling demurrers to the complaint, or in declining to strike counts 5 to 28 inclusive.—11 Cyc. 778, and cases there cited; 11 A. & E. Enc. of Law, 284. Counsel discuss the instrument and insist that it was a conditional sale, and in support thereof cite.—*Anderson v. Lewis,* 103 Ala. 428; *Montgomery I. Wks. v. Smith,* 98 Ala. 644; *Warren v. Liddell,* 110 Ala. 443; *Sumner v. Woods,* 67 Ala. 142; *Fairbanks-Morse & Co. v. Eureka Co.,* 67 Ala. 113; *Goodgame v. Sanders,* 140 Ala. 247; *Weinstein v. Fryer,* 93 Ala. 257; 32 L. R. A. 459, note D. Plaintiff is not estopped to assert his title as claimed in the contract.—*Leigh Bros. v. M. & O. R. R. Co.,* 58 Ala. 165. Counsel then cite a number of cases from

other courts as to sales in bulk. The absolute promise of the vendee to pay did not render the contract inconsistent with their intention to make it a conditional sale.—*Freed F. Co. v. Sorenson,* 107 Am. St. Rep. 731; *Harkness v. Russell,* 118 U. S. 663.

ANDERSON, J.—The defendant was a purchaser of the wagons in question for value and without notice of the plaintiff's claim or title to same. Howle may have, and, of course, did have, notice of the plaintiff's title, and subsequently became connected with the defendant corporation; but at the time of the sale he was representing himself as the successor to or owner of the Shelnut Mercantile Company, and notice to him cannot be imputed to the defendant corporation.—*Frenkel v. Hudson,* 82 Ala. 158, 2 South. 758, 60 Am. Rep. 736. If, therefore, the instrument under which the purchase was made is a mortgage, the failure to record same would give the defendant protection under the statute of registration. And section 3394 of the Code of 1907 applies the same results, for a failure to register, to conditional sales as does the statute as to the registration of mortgages; but said section 3394 does not apply to the instrument in question, if a conditional sale, as Calhoun county was excepted from the influence of said section 3394 when the sale was made.—Acts 1900-1, p. 1516.

The said instrument is unlike the one construed in the case of *Dowdell v. Empire Co.,* 84 Ala. 316, 4 South. 31. And we may concede that it is a conditional sale, and not a mortgage, for the purpose of deciding this case, as the result will be the same as applied to the facts contained in the record. It is well settled, in this and other states, that, where the vendor retains title to the thing sold until the price is paid, the title does

not pass; the transaction being a mere conditional sale, "and that a bona fide purchaser of such property acquires only the conditional title of his vendor, and cannot be protected against recovery on suit brought by the original vendor and owner of the legal title. The fact that the first purchaser, or second vendor, was at the time of sale in possession of the property, does not change the principle. It is a question of right, not notice, and the maxim 'caveat emptor' applies with as much force as in cases of ordinary bailments. The principle, of course, does not obtain where the condition has been expressly or impliedly waived by the vendor, or he has done or suffered anything by reason of which the purchaser from the vendee has been misled."—*Sumner v. Woods*, 67 Ala. 139, 42 Am. Rep. 104. "Where the owner, by his act or consent, has given another such evidence of the right to sell or otherwise dispose of his goods as, according to the customs or the common understanding of the world, usually accompanied the authority of sale or disposition, as where a manufacturer delivers property, retaining title, to a retail dealer for the purpose of sale by the latter, a sale by the person thus intrusted with the possession of the goods, and with the indicia of ownership, or of authority to sell or otherwise dispose of them, in violation of his duty to the owner, to an innocent purchaser for value, will prevail against the reserved title of the owner."—*Bent v. Jerkins*, 112 Ala. 485, 20 South. 655; *Leigh v. M. & O. R. R.*, 58 Ala. 165; *Lawrence v. Owens*, 39 Mo. App. 325; *W. W. W. & M. Co. v. Carman*, 109 Ind. 31, N. E. 707, 58 Am. Rep. 382; 6 Am. & Eng. Encyc. of Law, 483, and cases cited in note 1.

A few cases confine the protection to purchasers only from a retailer in the due or ordinary course of trade, and not to one who buys the whole stock in bulk or by

wholesale from a retailer.—*Burbank v. Crooker*, 7 Gray (Mass.) 158, 66 Am. Dec. 470; *Pratt v. Burhans*, 84 Mich. 489, 47 N. W. 1064, 22 Am. St. Rep. 703. The weight of authority, however, and among which are our own cases of *Bent v. Jerkins* and *M. & O. R. R. v. Leigh, supra,* do not confine the waiver or estoppel in favor of purchasers in retail or the ordinary course of trade alone, but extend it to all innocent purchasers for value. They hold that, notwithstanding goods be sold, with title reserved, to a retailer to dispose of only in the ordinary course of trade, an innocent purchaser from him will be protected, although he exceeded his authority in making the sale. If he sold only in the customary way, he would not exceed his authority, or breach his duty to the owner, and the expression that protection will be awarded an innocent purchaser, although the second vendor exceeds his authority, and breaches his duty to the owner in making the sale, was needless if the rule was confined to retail sales; for if a retailer sells only in the usual or customary manner, he would not exceed the authority given him as a retailer. The case of *Lawrence v. Owens*, 39 Mo. App. 325, cited approvingly in the case of *Bent v. Jerkins, supra,* involved a purchase in bulk.

The facts in the case at bar show that the wagons were sold to the Shelnut Mercantile Company, a retailer, with authority to sell or dispose of same in the ordinary course of business. If the said company breached a duty to the plaintiff in making the sale, the said plaintiff gave them the indicia of ownership and authority to sell, and is estopped from claiming under a reserved title as against this defendant, who was an innocent purchaser for value, and who was not charged with the Shelnut Company's breach of duty to the plaintiff as to the manner of making the sale.

The trial court erred in rendering judgment for the plaintiff, and the judgment must be reversed; and, as the case was tried by the court without a jury, under the practice act for the circuit court of Calhoun county (Acts 1907, p. 397), a judgment will be here rendered for the defendant.

Reversed and rendered.

DOWDELL, C. J., and SAYRE and EVANS, JJ., concur.