## Pinckard, *et al. v.* Cassels.

### Trover and Conversion.

(Decided November 4, 1915.   70 South. 153.)

1. **Appeal and Error; Review; Findings.**—The conclusions of the trial court in a cause tried by the court without a jury in which no request is made for a special finding of fact, have the effect of a verdict, and are not subject to review if supported by the evidence (§§ 5359-61, Code 1907).

2. **Mortgages; Title; Validity.**—Where, at the time of the execution of the mortgage the mortgagor had no rent agreement or contract for the land

[Pinckard, et al. v. Cassels.]

on which the crops were to be planted, a mortgage on a crop to be grown is invalid, since such crops had no potential existence.

3. **Same; Conversion.**—Where a person converts crops which were mortgaged before planting, after such crops have been gathered, he is liable in an action for the destruction of a lien or in detinue for the particular crop, or in trover for the conversion, if he had actual or constructive notice of the lien.

4. **Trover and Conversion; Right of Possession.**—There must be a concurrence of the right of property, general or special, with an immediate right of possession in plaintiff at the time of the conversion, in order to maintain trover.

5. **Mortgages; Crop; Legal Title.**—Under § 4894, Code 19007, a mortgagee whose mortgage was executed after January 1st, has the legal title to the crops grown that year, and a mortgage on the same crops executed a year earlier conveys only an equitable interest; hence, the last mortgagee may maintain trover for conversion of the crops.

6. **Same; Action; Evidence.**—The evidence in this case examined and held to show that at the time of the execution of the mortgage of 1913, the mortgagor had no contract or lease entitling him to possession of the lands on which the crops were grown for the following year of 1914, and hence, that the mortgage of 1913 passed no title to the crop.

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Action by W. D. Pinckard and Carl Lay against C. G. Cassels in trover and conversion for two bales of cotton. Judgment for defendant, and plaintiff Pinckard appeals. Transferred from Court of Appeals under section 6, Act April 18, 1911 (Acts 1911, p. 449). Reversed and rendered.

Plaintiff claims through a mortgage executed by W. H. Edwards on May 23, 1914, and recorded on the same day. Defendant claims through a mortgage executed to him by W. H. Edwards on May 2, 1913, and recorded June 10, 1913. The cotton was grown on what is known as the Thornton land. The facts as to the renting sufficiently appear from the opinion.

GEORGE D. MOTLEY, for appellants. CULLI & MARTIN, for appellee.

THOMAS, J.—The complaint contains counts in trespass and in trover. The defendant interposed the plea of the general issue. The cause was tried without a jury, and there was neither a special finding of facts nor request for such special finding of facts. The judgment was for the defendant.

[Pinckard, et al. v. Cassels.]

(1) Our court has declared that when a case is tried without a jury, and there is no special finding of facts, nor request therefor, the conclusion of the trial judge has the effect of the verdict of a jury, and that, if it was supported by the evidence, it is not subject to review.—Code 1907, §§ 5359, 5360, 5361; *McIntyre Lumber & Export Co. v. Jackson Lumber Co.*, 165 Ala. 268, 275, 51 South. 767, 138 Am. St. Rep. 66; *Montgomery Lodge No. 596, B. P. O. E., v. Massie*, 159 Ala. 437, 49 South. 231. The deciding question was one of fact, and on this appeal, the judgment of the trial court having the effect of the verdict of a jury, the pertinent inquiry is whether there was sufficient evidence to support the judgment.—*Briel v. Exchange National Bank*, 180 Ala. 576, 578, 61 South. 277.

(2) If when defendant's mortgage was executed by W. H. Edwards on May 23, 1913, he had no rent agreement or contract, express or implied, for the land on which the cotton in controversy was grown in 1914, defendant's mortgage was not admissible as evidence.—*Windham v. Stephenson*, 156 Ala. 341, 47 South. 280, 19 L. R. A. (N. S.) 910, 130 Am. St. Rep. 102. The mortgagor must own, or have some interest in, the land on which the crops are grown, to create a lien on the crops to be grown by the giving of a mortgage thereon, notwithstanding the mortgage, when given, covers crops to be grown each successive year until the debt evidenced thereby is paid. The mortgagee can acquire no lien on the crop of a subsequent year, raised on land in which the mortgagor had no interest at the time of the execution of the mortgage.—*Christian & C. G. Co. v. Michael & Lyons*, 121 Ala. 87, 25 South. 571, 77 Am. St. Rep. 30; *Karter v. Fields*, 140 Ala. 364, 37 South. 204; *Paden v. Bellenger*, 87 Ala. 576, 6 South. 351; *Ala. S. Bank v. Barnes*, 82 Ala. 619, 2 South. 349; *Varnum v. State*, 78 Ala. 30; *Burns v. Campbell*, 17 Ala. 278; *Mayer v. Taylor*, 69 Ala. 403, 44 Am. Rep. 522; *Grant v. Steiner*, 65 Ala. 499. The statute of this state as to unplanted crops is as follows: "A mortgage of unplanted crops of agricultural products, executed on or after the first day of January of the year in which such crops are grown, conveys the legal title thereto in all respects as if such crops were already planted."

This is the codification of the act approved February 23, 1889 (Acts 1888-89, p. 45), the title of which was "To enable

planters and farmers and crop growers to convey by mortgage unplanted crops," and which contained the proviso: "'That no such mortgage shall be valid so as to convey the legal title, if executed prior to the first day of January of the year in which the crop is grown."

This act was inserted in the Code of 1896, as section 1064, which section was readopted in the Code of 1907 as section 4894, in the same language. Since this statute, it has been held that a mortgage executed after the 1st of January conveys the legal title to the unplanted crop, but that a mortgage executed before that date conveys only an equitable title.—*Shows v. Brantley*, 127 Ala. 352, 28 South. 716. This statute was first construed by Chief Justice Stone, in *Hooper v. Payne*, 94 Ala. 223, 10 South. 431, and the construction there rendered was followed by Chief Justice Brickell in *Keyser v. Mass & Schwartz*, 111 Ala. 390, 21 South. 346, and by Chief Justice McClellan and Dowdell in *Woods v. Rose & Co.*, 135 Ala. 297, 33 South. 41, and *Gaston v. Marengo Improvement Co.*, 139 Ala. 465, 467, 36 South. 738, respectively.

In *Sellers & Orum Co. v. Hardaway*, 188 Ala. 388, 66 South. 460, the effect of section 4894 of the Code, on title, where the mortgage was executed before January 1st, was not considered. The only question there decided was that a mortgage upon cotton to be grown is not valid, where, at the time of the execution of the mortgage, the mortgagor had no valid lease of the land on which the crop was to be raised, but was merely *negotiating* for a lease, because the crop had no potential existence. The action was by the assignee of a mortgagee, against the purchaser of cotton from the tenant, and the complaint is "grounded upon the destruction of the asserted lien" of the mortgage. It was not necessary in that case to decide whether the lien created by the mortgage was legal or equitable. Such were the facts for decision in *Windham & Co. v. Stephenson & Alexander*, 156 Ala. 341, 47 South. 280, 19 L. R. A. (N. S.) 910, 130 Am. St. Rep. 102.

(3) When a mortgage is of an unplanted crop, any person who converts it to his own use after it is gathered, with actual or constructive notice of the lien, is liable to the mortgagee in an action for destruction of the lien (*Rees v. Coats*, 65 Ala. 256), or, in a proper case, in detinue, for the specific product, or in

trover for its conversion (*Ballard v. Mayfield,* 107 Ala. 396, 18 South. 29; *Woods v. Rose & Co.,* 135 Ala. 297, 33 South. 41; *Sellers & Orum Co. v. Hardaway et al., supra*).

In the case at bar the action is for the value of two bales of cotton, and is brouht by mortgagees, Pinckard & Lay, against C. G. Cassels, another mortgagee, of one W. H. Edwards. The undisputed facts were that on May 23, 1914, Edwards gave Pinckard & Lay a mortgage, due October 15, 1914, on his "entire crop of corn, cotton and produce, and all rents accruing ＊ ＊ ＊ for the year 1914, and each succeeding year in the county in which" the mortgagor then resided, "until paid," and that this mortgage was on the day of its date filed for record in the probate office of Etowah county and duly recorded.

The defendant offered in evidence, against the objection and exception of the plaintiffs, a mortgage, duly recorded in the probate office of Etowah county, from W. H. Edwards to C. G. Cassels, conveying certain specifically described personal property, and "also my entire crop of cotton, cotton seed, corn, fodder, hay, wheat, oats, rye, peas, sorghum, and all other produce which I may raise or cause to be raised, or which may accrue to me for rent on my own or any other land in Etowah county, Alabama, during the year 1913, and succeeding years until said secured debt is paid in full," and a mortgage from Edwards to defendant, duly recorded in said county, of date June 6, 1914, conveying specific personal property, with a crop clause of like terms, for the year 1914, and those in the said mortgage for 1913, "and each succeeding year," etc.

(4) Under the count for trover, there was presented the question of the right of possesion of the two bales of cotton when they were received by the defendant. In *Zimmerman Manufacturing Company v. Dunn,* 163 Ala. 272, 275, 50 South. 906, the Chief Justice states the rule to be settled in this court that in the action of trover there must be a concurrence of the right of property, general or special, and of possession, or the immediate right of possession, in the plaintiff, at the time of the conversion.—*Beall v. Folmar,* 122 Ala. 414, 419, 26 South. 1; *Tallassee Falls Mfg. Co. v. First Nat. Bank,* 159 Ala. 315, 49 South. 246; *Southern Railway Co. v. Attalla,* 147 Ala. 653, 41 South. 664; *Stafsky v. Southern Railway Co.,* 143 Ala. 272, 39 South. 132; *Johnson v. Wilson,* 137 Ala. 468, 34 South. 392, 97

Am. St. Rep. 52; *Moore v. Walker*, 124 Ala. 199, 26 South. 985; *Draper v. Lewis*, 98 Ala. 310, 13 South. 595.

(5, 6) Had, then, the plaintiffs the legal title and the right of possession to the two bales of cotton sued for? It is admitted that the defendant received the cotton from Edwards in November, 1914, and denied plaintiff's right thereto. It is clear from the evidence, under the several decisions of this court construing section 4894 of the Code, that plaintiffs had the legal title to the entire crop of cotton grown by W. H. Edwards for the year 1914, in Etowah county, where he then lived, and after the law day of the mortgage had the right of possession thereto. The defendant could not have the legal title to the cotton grown in 1914, under the mortgage given by Edwards to him May 2, 1913; and to assert his title under this mortgage he must show that at the time the mortgage was executed (May 2, 1913) W. H. Edwards had a valid lease of the land where the crop was to be produced and was produced in 1914. If he had not such valid lease of these lands when the mortgage was executed in 1913, where the cotton in question was produced in 1914, it could have no potential existence.—*Sellers & Orum Co. v. Hardaway, supra; Windham v. Stephenson, supra; Paden v. Bellenger*, 87 Ala. 575, 6 South. 351. The evidence on this point was that of the witness Chas. H. Roberts, the agent of Mr. Thornton, the owner of the land, and was as follows: "I know W. H. Edwards. There was no direct trade between W. H. Edwards and me for the rent of some land in 1914. It was understood in a way that he would stay on. I was in charge of the Thornton land up there. There wasn't anything occurred between Mr. Edwards and me, but just in a way, as I stated, it was understood that he would stay on. I let Mr. Green have the land that he cultivated when he came there the first year, and Mr. Green was to be responsible for the crop and so on, and then after that it was like I tell you; just in a way—he stayed on, it was understood, if a man done right, and paid the rent, and cultivated the land, he stayed on. I rented the land one year at a time, and that was as long as any of us had any charge. There was no contract to rent the land last year. It was just—there never was no contract drawed up; just verbal. It was like I first told you; they was to remain on in a way; the understanding was, after they rented the first time that way, they just got together and rerented. I

suppose it was understood that it was for a year at the time. This man did not come to me direct to rent the land; as I have stated, in a way it was understood he would stay on; that was the only contract there was. The first year he as there, he came there with Mr. Green, and I rented the land to Mr. Green, and Mr. Green has been there since, as well as Mr. Edwards. There was no agreement after the first year, except as I have stated. If a man done right and went on, he stayed there. It was generally understood, if a man made a break any way, he was to let me know if he was going to move—anything in that respect. There was no contract by which he was to stay longer than one year at a time with him or nobody. I was in charge of the place. W. H. Edwards had no contract in 1913 to rent this land for 1914 that I knowed anything about. I was superintendent in charge and rented it. Nobody on the farm didn't have a contract under my management, except a year at the time," etc.

The mortgagor not having had on May 2, 1913, such an interest in the result of the rental contract for the year 1914, in the lands on which the cotton in question was grown, no right or lien was acquired by C. G. Cassels to the two bales of cotton in question, of the crop grown by Edwards for 1914.

The judgment of the city court of Gadsden is reversed, and judgment is here rendered for appellants for $74.74, this being the value of the cotton converted, with interest thereon to date.

Reversed and rendered.

ANDERSON, C. J., and MCCLELLAN and SAYRE, JJ., concur.