(95 South. 282)

**WARRANT WAREHOUSE CO. v. COOK.**

(6 Div. 386.)

(Supreme Court of Alabama. Nov. 2, 1922. Rehearing Denied Jan. 25, 1923.)

**1. Principal and agent ⬥19, 119(1)—Burden of proving authority of agent rests on him who asserts it.**

The burden of proving agency and the authority of the agent rests upon the party affirming it.

**2. Payment ⬥65(6)—Burden of proof is on party asserting it.**

The burden of proving payment in full of the amount due on a conditional sale contract,

so as to show title vested in the buyer, is upon the party asserting it.

**3. Sales ⬥467—Conditional seller held lawfully in possession when it delivered to defendant.**

Where a conditional sale contract authorized the seller to retain possession for resale for the buyer's account, and the evidence showed that the expense of recording the contract and a sum advanced to a bank which discounted the notes had not been repaid by the buyer as required by the contract, the seller was lawfully in possession, when it stored the goods in a public warehouse, taking therefor a negotiable warehouse receipt.

**4. Warehousemen ⬥34(6)—Held entitled to prove automobile was held under warehouse receipt.**

In an action for conversion, brought by a conditional buyer of the property as against a public warehouseman, with whom the property had been stored by the conditional seller, where the plaintiff failed to prove full payment of the amounts required by the contract, it was error to exclude evidence on behalf of the warehouseman that it had issued a negotiable warehouse receipt pursuant to Gen. Acts 1915, p. 661, which had been pledged with the warehouseman's indorsement to a bank as security for a loan, and that the warehouseman had been required to repay the loan on its indorsement, and had received the warehouse receipt.

**5. Evidence ⬥433(11)—Parol evidence held admissible to show mistake in warehouse receipt.**

Where the claim of defendant to an automobile was based upon a public warehouse receipt, issued by defendant and assigned to it, when it was obliged to pay a note for which the receipt was pledged as collateral, parol evidence was admissible to show that the number of the automobile stated in the receipt was a mistake, that only one automobile had been delivered by plaintiff's conditional seller to the warehouseman, which was the one covered by the receipt and claimed by plaintiff.

**6. Trial ⬥142—Affirmative charge not given, if jury could draw inference adverse to party requesting it.**

An affirmative charge should not be given, if there is evidence reasonably affording an inference adverse to the right of recovery by the party requesting the charge.

**7. Sales ⬥454—Evidence held to authorize inference for the jury that a conditional sale of an automobile to an employé of a motor sales company was arrangement to raise money to repurchase his stock.**

In trover by an employé of a motor sales company against a warehouse company for an automobile received for storage from the sales company, evidence *held* to warrant the inference that a conditional sale to the employé under which he claimed was a mere arrangement between him and the sales company, whereby the latter was enabled to borrow the money necessary to repurchase the employé's corporate stock, so that a question for the jury on such evidence was presented.

**8. Principal and agent ☞124(3)—Authority of corporation's agent to take stock in payment for automobile held jury question.**

Where plaintiff claimed the automobile in controversy under a conditional sale contract, in part payment of which he had delivered to the agent of the corporation owning the automobile stock in that corporation, at a price above par, the authority of the agent to take the stock in exchange for the automobile *held* a question for the jury, so that the affirmative charge for plaintiff was improper.

**9. Estoppel ☞119—Evidence held·to authorize inference conditional buyer had clothed seller with indicia of ownership.**

Evidence that the conditional buyer of an automobile, whose contract permitted the seller to retain possession for resale by the seller for the buyer's account, had never had possession of the car, *held* to warrant the jury in inferring that the buyer had clothed the seller with the indicia of ownership, so that affirmative charge was properly refused as against bona fide purchaser.

**10. Sales ☞472(5)—Record of conditional sales contract is notice title is not in buyer.**

Under Code 1907, § 3394, as amended by Acts 1911, p. 115, the record of a conditional sales contract is constructive notice that the title to the property is not in the buyer, if possession has been delivered to him, but is not constructive notice of the rights of the buyer, where the possession was retained by the seller, with authority to resell on behalf of the buyer.

**11. Sales ☞481—Evidence held to raise jury question as to seller's authority to store under negotiable receipt.**

In an action for the conversion of an automobile by a warehouseman, evidence *held* to raise question for the jury as to whether the warehouseman had a right to accept the automobile for storage from plaintiff's conditional seller, who was authorized to retain possession and sell on behalf of the plaintiff, so that the warehouseman became an innocent purchaser, when obliged to pay a loan for which a receipt had been pledged as collateral.

**12. Evidence ☞113(8), 601(4)—Evidence of purchase price can be considered in fixing value, but is not conclusive.**

The price paid by plaintiff for the converted chattel is evidence of its value, though not conclusive evidence thereof, so that a charge that, if the jury were satisfied from the evidence as to the reasonable market value of the car, the price paid by plaintiff for it could not be further considered by them, was erroneous.

Appeal from Circuit Court, Jefferson County; W. J. Martin, Judge.

Action in trover by Oscar U. Cook against the Warrant Warehouse Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Charge 3, given for plaintiff, is as follows:

"3. The jury are to fix the reasonable market value of the car, if they find for the plaintiff, and if the jury are reasonably satisfied from the evidence that the reasonable market value of the car at such time as the court tells you to fix such value, is a certain amount, then the price, if any, that plaintiff paid for the car could not be further considered by the jury, in fixing the amount of their verdict."

Frank S. White & Sons, of Birmingham, for appellant.

Elcar Motor Sales Company did not sign contract or deliver possession of car, and title did not pass to plaintiff, so as to enable him to recover. 39 South. 576; 200 Ala. 122, 75 South. 570; 84 Ala. 316, 4 South. 31; 135 Ala. 622, 33 South. 832; 93 Ala. 70, 9 South. 372; 73 Ala. 304; 5 Ala. 398; 137 Ala. 468, 34 South. 392, 97 Am. St. Rep. 52; 68 Ala. 378; 67 Ala. 526; 55 Ala. 266. Where authority of an agent rests in parol, the extent of his authority is a question for the jury. 104 Ala. 188, 16 South. 46; 135 Ala. 177, 33 South. 268; 186 Ala. 341, 64 South. 617; 200 Ala. 226, 75 South. 984. Defendant should have been permitted to introduce its negotiable warehouse receipt issued to Elcar Motor Sales Company, to show its pledge by that company and defendant's indorsement thereof, that said company failed to pay the debt secured thereby, that defendant paid the same in order to reclaim its receipt, and that defendant had no notice of the alleged sale to plaintiff of the car at the time the receipt was issued. Acts 1915, p. 661; 239 U. S. 520, 36 Sup. Ct. 194, 60 L. Ed. 417, Ann. Cas. 1917E, 25; 139 La. 797, 72 South. 251; 221 Fed. 16, 136 C. C. A. 542; 145 La. 1066, 83 South. 255. Plaintiff, having clothed the Elcar Motor Sales Company with all the indicia of ownership and having given it the power to sell the car, cannot now recover from an innocent purchaser for value. 169 Ala. 154, 53 South. 1014, 33 L. R. A. (N. S.) 374; 58 Ala. 165; 200 Ala. 122, 75 South. 570; 94 Iowa, 75, 62 N. W. 669, 27 L. R. A. 733, 58 Am. St. Rep. 382; 112 Ala. 485, 20 South. 655; 239 U. S. 520, 36 Sup. Ct. 194, 60 L. Ed. 417, Ann. Cas. 1917E, 25. Filing for record of the alleged contract of sale between Elcar Motor Sales Company and plaintiff was not constructive notice to defendant of plaintiff's title. It was intended to protect only the vendor from purchasers or creditors of plaintiff. Acts 1911, p. 115; Code 1907, § 3394; 69 Ala. 127; 60 Ala. 226. The affirmative charge should not be given, where there is material conflict in the evidence, or the evidence affords an inference adverse to party requesting it. 151 Ala. 312, 44 South. 37; 193 Ala. 658, 69 South. 102; 166 Ala. 482, 52 South. 86; 203 Ala. 296, 82 South. 549; 194 Ala. 135, 69 South. 540.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

W. T. Hill and Harsh, Harsh & Harsh, all of Birmingham, for appellee.

Though title to the car did not vest in plaintiff at the time of the execution of the contract, yet there did vest in him a right to acquire the title. 110 Ala. 232, 20 South. 89. A transfer without recourse of the note given for the price, without an assignment of the title to the property, will vest the title in the buyer. 35 Cyc. 672; 60 S. E. 1014. Irrespective of registration, one who purchases chattels from another acquires no better title than his vendor had, although he purchases without notice of any infirmity in the title and for a valuable consideration. 202 Ala. 650, 81 South. 669; 146 Ala. 490, 41 South. 149. Registration statutes are notice to all the world of the rights stated in the instrument recorded, and one purchasing adversely to such rights cannot be an innocent purchaser for value. 200 Ala. 412, 76 South. 4; 181 Ala. 208, 61 South. 886; 17 Ala. App. 325, 85 South. 584; 204 Ala. 697.

THOMAS, J. The suit is in trover for an automobile; the general affirmative charge was given for the plaintiff.

To sustain his title, plaintiff introduced what purported to be a retention of title contract made to Elcar Motor Sales Company, a corporation, of date September 4, 1918, which was executed by plaintiff alone, filed for record in the probate office of Jefferson county on September 6, 1918, and recites a consideration of $3,315, of which $1,115 was paid in cash on delivery, and the remainder evidenced by promissory notes; and it stated that the title to the car remained in Elcar Motor Sales Company until the entire purchase price with interest and recording expenses was paid. The certificate of the judge of probate was to the effect that the record tax to the amount of $3.30 had been paid on that "instrument." The evidence further shows that the notes for the deferred payments recited in the contract were discounted, and they and the contract transferred and assigned by the Elcar Motor Sales Company, a corporation, to the Realty Trust Company indorsed thereon on the date the same were made, September 4, 1918; that the possession of the car continued with the Elcar Motor Sales Company and plaintiff never had possession, but that it was left with the motor sales company to sell for his account.

Plaintiff first testified of the cash payment recited in the contract, that it was paid with $1,000 of the capital stock of the Elcar Motor Sales Company, owned by the plaintiff or, as he later testified, he had agreed to sell the stock to the manager of that corporation for the price indicated, and that this debt for contract price of the stock was discharged by the cash payment of $1,115, recited in the contract or agreement of sale of the car in question, and that the Elcar Motor Sales Company paid the Realty Trust Company a sum aggregating $635 on the discount of the deferred payments, notes, and transfer and assignment to it of said contract. Plaintiff further testified that, about the 1st of March, 1919, the Elcar Motor Sales Company failed in business, its manager leaving the city of Birmingham; that plaintiff thereafter paid the remainder of the Elcar Motor Sales Company note to the Realty Trust Company, the last of said notes being paid on July 19th of same year, at which time the Realty Trust Company transferred and assigned to plaintiff all of its title, right, and interest in the contract and the property made the subject thereof.

[1] The authority of L. J. Lively, as agent or sales manager of the Elcar Motor Sales Company, is shown only by his acts as testified by plaintiff. Roberts & Sons v. Williams, 198 Ala. 290, 73 South. 502; Crandall-Pettee Co. v. Jebeles & Colias Conf. Co., 195 Ala. 152, 69 South. 964. The burden of proving agency rests upon the party affirming it. Capital Sec. Co. v. Owen, 196 Ala. 385, 72 South. 8. The expense of recording the instrument in question was, as we have indicated, $3.30, besides the recording fee. This amount, and the sum of $635 paid by the Elcar Motor Sales Company to the Realty Trust Company, were never paid by the plaintiff to Elcar Motor Sales Company.

Defendant's title and immediate right of possession to the property in question (Pinckard v. Cassels, 195 Ala. 353, 357, 70 South. 153; Johnson v. Wilson & Co., 137 Ala. 468, 34 South. 392, 97 Am. St. Rep. 52; Corbitt v. Reynolds, 68 Ala. 378; Elmore v. Simon & Bro., 67 Ala. 526; Booker v. Jones' Adm'x, 55 Ala. 266; Thrasher v. Neeley, 196 Ala. 576, 72 South. 115) is sought to be established as follows: That it was conducting a warehouse for the storing or housing of such personal property from and on the 11th of September, 1918, continuously until the time the suit was brought, and that as such it was in the possession of the car, having it in its warehouse on and from said date. Whereupon defendant offered to prove that it was conducting a warehouse in the city of Birmingham, which it was authorized to do under the laws of Alabama, on the date the car was placed in its possession on September 11, 1918; that it had no knowledge or notice of the contract under which plaintiff claimed title to the car at the time defendant received the car for storage from the Elcar Motor Sales Company, which company was in possession of the car, and delivered that possession to defendant, who thereupon or immediately issued and delivered to the sales company its negotiable warehouse receipt for the car; that the sales company used and attached such warehouse receipt as collateral security to a note, which it made to the First National Bank of Birmingham for $1,650 and

obtained from the bank such sum, with defendant's indorsement of said note, that the same was not paid by the Elcar Motor Sales Company at maturity and was paid by defendant in order to obtain possession of its negotiable warehouse receipt for the car.

On objection of plaintiff, defendant was denied the right to make proof of such facts, to which due exception was reserved. In this ruling the court was in error. The title to the car did not vest absolutely in plaintiff upon the execution of the contract, since the title thereto was retained by the terms of that instrument in the Elcar Motor Sales Company until entire purchase price and expenses of recording were paid. It is without dispute that amounts aggregating $635, paid to the Realty Trust Company by the Elcar Motor Sales Company as indorsers of plaintiff's notes, and the expense of recording the contract were never paid to the latter company by plaintiff.

[2-5] The burden of proving payment is on the party asserting the same; and to the extent of the aforementioned sums, paid by the Elcar Motor Sales Company, plaintiff has not made proof. Snodgrass v. Caldwell, 90 Ala. 319, 7 South. 834; Pollak v. Winter, 173 Ala. 550, 554, 55 South. 828. That is to say, the court committed error in not permitting the defendant to prove that it was such a warehouseman, authorized by law to receive such property on storage, at the time it received the car in controversy for storage from the party rightfully in immediate possession of the same. So also should defendant have been permitted to introduce the negotiable warehouse receipt issued by it to the Elcar Motor Sales Company, and prove that said receipt was pledged as collateral security to the First National Bank for an advance in money made thereon by the bank to the Elcar Motor Sales Company; that defendant was the indorser on the sales company's note; that there was a failure of payment by the maker thereof; and that defendant paid the note in order to reclaim its negotiable warehouse receipt, and had no knowledge, or notice of facts amounting thereto, of the alleged sale of the car to plaintiff at the time its receipt was issued, pursuant to the terms of the statute and the articles of its creation. Gen. Acts 1915, p. 661. So, also, should the court have admitted parol evidence to the effect that the number of the car as contained in the receipt was not its true number; that it had no other car from the Elcar Motor Sales Company in storage than the car in question, and made the subject of the warehouse receipt whatever its true number was. A. G. S. v. Norris, 167 Ala. 311, 315, 52 South. 891; Churchill v. Walling, 205 Ala. 509, 88 South. 582.

[6-8] The affirmative charge should not be given for plaintiff, if there is evidence reasonably affording an inference adverse to the right of recovery by the party asking the general charge, or from which the jury might draw an inference adverse to such party. McMillan v. Aiken, 205 Ala. 35, 88 South. 135; Bowen v. Hamilton, 197 Ala. 418, 73 South. 5; Amerson v. Coronoa Coal Co., 194 Ala. 175, 69 South. 601; Sou. States Fire Ins. Co. v. Kronenberg, 199 Ala. 164, 74 South. 63. If it is not manifest from plaintiff's testimony that the transaction was a mere "arrangement" by which money might be borrowed to meet a financial emergency of the Elcar Motor Sales Company and to furnish it available moneys by which plaintiff's shares of stock in that company might be purchased, it was a reasonable inference that the jury might draw, instead of having the court take a contrary view and instruct them by the general affirmative charge. On this phase of the evidence a jury question was presented. Sou. States Fire Ins. Co. v. Kronenberg, supra; Lysle Mill Co. v. Nor. Ala. Gro. Co., 201 Ala. 222, 77 South. 748. So, also, of the nature and extent of the authority in the agent or sales manager of the Elcar Motor Sales Company to take shares of the capital stock of the corporation in payment for the car. Especially was this authority a fact for determination by the jury, in view of his agreement to pay a premium for that stock, $1,115 for stock of the par value of $1,000. Where the authority of the agent rests in parol, and there is no evidence that defendant had knowledge or notice of the limitation of that authority, contrary to that assumed in his acts and in and about the business of the motor sales company, for whom he acted or purported to act, the extent of his authority is a jury question. Pacific Mutual Life Insurance Co. v. Hayes, 202 Ala. 450, 80 South. 834; Georgia Cotton Oil Co. v. Carlisle, 200 Ala. 226, 75 South. 984; S. S. S. & I. Co. v. Payne, 186 Ala. 341, 64 South. 617; Patterson v. Neal, 135 Ala. 477, 33 South. 39; Syndicate Ins. Co. v. Catchings, 104 Ala. 176, 16 South. 46. The obligation of Lively to the plaintiff, incurred by his purchase of the latter's stock, and the discharge or attempted discharge of that liability by a transfer of a part of the corporation's "stock in trade" was some evidence from which the jury may have drawn an adverse inference to plaintiff, as to the scope and extent of the authority of the corporation's agent in dealing with the plaintiff, in the sale of the car or the procurement of available moneys from the bank or trust company.

[9, 10] There is yet another reason why the affirmative charge should not have been given. By plaintiff's testimony, he had never had possession of the car, and, to the extent his interest clothed the Elcar Motor Sales Company with the indicia of ownership and the possession thereof and gave it power to sell the car for his account, he cannot thereafter recover the same from an

innocent purchaser for value without notice. Under this phase of the evidence the cause should have been submitted to the jury. McBride & McMillan v. Kyle, 207 Ala. 273, 92 South. 455; People's Bank & Trust Co. v. Walthall, 200 Ala. 122, 75 South. 570; Bass, Heard & Howle v. International Harvester Co., 169 Ala. 154, 53 South. 1014, 33 L. R. A. (N. S.) 374; Leigh Bros. v. M. & O. R. R. Co., 58 Ala. 165, 178, 179. The evidence shows that defendant had no knowledge or notice of what purported to be retention of title sale contract, placing the title in plaintiff, unless defendant be charged with constructive notice by the record of that instrument. This record, under the authority of statute, is intended to give notice only of the title being in Elcar Motor Sales Company at the time of its execution, and title reserved until full payment of the purchase price, and thereby charge purchasers or incumbrancers from the plaintiff Cook with notice that he did not have the legal title to the car; that same was retained by the seller. Code, § 3394, as amended by Acts 1911, p. 115; Pulaski Mule Co. v. Haley & Koonce, 187 Ala. 533, 65 South. 783, Ann. Cas. 1916A, 877; Scotch Lbr. Co. v. Sage, 132 Ala. 598, 606, 32 South. 607, 90 Am. St. Rep. 932; Lehman, Durr & Co. v. Collins, 69 Ala. 127, 132; Monroe v. Hamilton, 60 Ala. 226; Gayle Motor Co. v. Gray-Acree Motor Co., 206 Ala. 586, 90 South. 334.

Adverting to sections 40, 41, and 47 of the Uniform Warehouse Receipts' Act of 1915, p. 670, it will be noted that said provisions have been construed by the Supreme Court of the United States in Commercial Nat. Bank v. Canal, etc., Co., 239 U. S. 520, 36 Sup. Ct. 194, 60 L. Ed. 417, Ann. Cas. 1917E, 25. There it was declared that a pledgee of a warehouse receipt, who permits the pledgor to withdraw bills of lading under an agreement to hold for the pledgee's account, and enables the pledgor to obtain negotiable warehouse receipts which they pledge to a bank as security for notes, cannot question the title of the latter, having clothed the pledgor with the indicia of ownership within the meaning of the doctrine established by the Uniform Warehouse Receipts Act, §§ 40, 41, 47; and that, if the owner of goods permits another to have possession or custody of negotiable receipts running to the order of the latter or bearer, it is a representation of title upon which bona fide negotiators for value are entitled to rely, despite breaches of trust or violations of agreement upon the part of the apparent owner. This bears striking analogy to the facts sought to be presented in the instant case.

If Cook had the title to the automobile by the full payment of the purchase money, he left the possession of same with the Elcar Motor Sales Company with authority to sell for his account, or to reimburse himself for the amount of the purchase price of his stock in the corporation, purchased by the corporation. Whatever he had paid on the notes to the Realty Trust Company, if its manager possessed such authority to so bind the corporation, was not Cook thereafter estopped to challenge the title of a bona fide purchaser for value without notice, though the same was sold without the due or ordinary course of that business or trade?

[11] We are thus brought again to a question of fact of the agent's authority in the sale or resale of the automobile, and, on the several reasonable inferences to be drawn from the evidence, the authority of the agent to store the automobile with the Warrant Warehouse under the Uniform Warehouse Receipts Act, to use that receipt or to hypothecate the same with the First National Bank as collateral to its notes, and to indemnify the Warrant Warehouse in the indorsement of the Elcar Motor Sales Company notes to the First National Bank. This rule has been applied by our court. In Bass, Heard & Howle v. International Harvester Co., 169 Ala. 154, 53 South. 1014, 33 L. R. A. 374, the court said:

"The weight of authority, however, and among which are our own cases of Bent v. Jerkins and M. & O. R. R. v. Leigh, supra, do not confine the waiver or estoppel in favor of purchasers in retail or the ordinary course of trade alone, but extend it to all innocent purchasers for value. They hold that, notwithstanding goods be sold, with title reserved, to a retailer to dispose of only in the ordinary course of trade, an innocent purchaser from him will be protected, although he exceeded his authority in making the sale. If he sold only in the customary way, he would not exceed his authority, or breach his duty to the owner, and the expression that protection will be awarded an innocent purchaser, although the second vendor exceeds his authority, and breaches his duty to the owner in making the sale, was needless, if the rule was confined to retail sales; for, if a retailer sells only in the usual or customary manner, he would not exceed the authority given him as a retailer." Crandall-Pettee Co. v. Jebeles & Colias Conf. Co., 195 Ala. 152, 69 South. 964; Donahoo H. & M. Co. v. Durick, 193 Ala. 456, 465, 69 South. 545; Peoples Bank & Trust Co. v. Walthall, supra; McBride & McMillan v. Kyle, supra; Bent v. Jenkins, 112 Ala. 485, 20 South. 655; Leigh Bros. v. M. & O., 58 Ala. 165.

We are of opinion that the case should be retried upon the relevant evidence which, as we have indicated, was excluded.

[12] The trial court should not have given, at plaintiff's request, charge No. 3, for the reason that the charge withholds from the jury the right of consideration of what plaintiff paid for the car when fixing its value. This fact is not conclusive on this point, yet it was at least evidence to which the jury may look in consideration of other evidence before them, in ascertaining the value of the car at the time of the conversion of the same, if it was converted, or to bring-

ing of the suit. This evidence was pertinent, in view of the testimony of plaintiff's witness Whitson, in fixing the reasonable market value of the car in considering the selling price at the time of that kind of car. The same reason applies as to the testimony of plaintiff's witness Body, who, after stating the value of the car, said he was referring to the selling or list price of such a car. This evidence, and the price at which the car was sold, being before the jury, it was error to deny the jury the right to consider its purchase price in ascertaining its true market value at the time of the conversion or thereafter to the bringing of the suit. The giving of charge 3 was an invasion of the province of the jury.

It is not necessary to consider other assignments of error, since the same may not be pertinent to a retrial of the issues presented.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.