EVANS, Respondent, *v.* SILVER BOW MOTOR CAR CO. et al., Appellants; CARMICHAEL et al., Respondents.

(No. 7,178.)

(Submitted January 4, 1934. Decided January 29, 1934.)

[29 Pac. (2d) 381.]

*Mr. J. A. Poore,* for Appellants, submitted a brief and argued the cause orally.

*Mr. Earle N. Genzberger* and *Mr. Joe C. Giacoma,* for Respondents, submitted a brief; *Mr. Genzberger* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The Silver Bow Motor Car Company, a corporation, and Melvin W. Wrenn, defendants, have appealed from a judgment in favor of the plaintiff, Jennie Evans, doing business as "The Yellow Cab Company," in an action for conversion.

The indisputable history of the transactions out of which this action arose is as follows: Mrs. Jennie Evans ran a small taxicab business in Butte, in which, in December, 1931, she employed but one automobile. She was in debt and without funds, but desired to purchase two new cars for use in her business. In this situation Mrs. Evans secured the tentative agreement of Mrs. Edythe Carmichael to finance her to the extent of $3,000, secured by a lien on the business and equipment of the Yellow Cab Company. No money had been advanced by Mrs. Carmichael and no agreement reduced to writing, when, on December 15, the two women went to defendant company's place of business and there negotiated with the salesman, Wrenn, for the purchase of two Plymouth automobiles. It then developed that Mrs. Carmichael was also without current funds, but it was finally agreed between her and Wrenn that she should have the two cars for $1,670, plus a "finance charge" of $213.04, on the following terms: $75 on delivery, being the trade-in value of Mrs. Evans' old car; $525 on or

before February 15, 1932, and the balance payable at the rate of $71.28 per month, over a period of eighteen months. This contract was duly reduced to writing, signed by the company and Mrs. Carmichael, and filed in the office of the county clerk of Silver Bow county on December 16, 1931.

Two notes were drawn, one for $525 payable February 15, 1932, and the other for $1,283.04, payable in monthly installments as provided in the contract; both notes were signed by Mrs. Carmichael and Mrs. Evans and delivered to the defendant company. Wrenn demanded security for the payment of the first note, and Mrs. Carmichael agreed to deliver 100 shares of "Inspiration Stock" (value not mentioned), which was then in Anaconda; these shares of stock were delivered the next day and retained by the company.

The cars were delivered to a paint shop, where they were painted yellow and lettered and then delivered to Mrs. Evans for use in her business. A week after the cars were purchased, Mrs. Evans, for the recited consideration of $1, executed and delivered to Mrs. Carmichael a bill of sale of the Yellow Cab Company, and, for a like consideration, Mrs. Carmichael contracted to convey the business to Mrs. Evans on payment of $1,029.33, with interest, in three years, and her agreement "to pay monthly when due and until fully and completely paid for the monthly payment due upon the said two Plymouth automobiles * * * to the Silver Bow Motor Car Company."

When the first monthly payment fell due, Mrs. Evans was able to pay but one-half thereof, whereupon the company took one of the cars into its possession and held it until Mrs. Evans should pay the balance. When the second payment fell due, February 15, Mrs. Evans was unable to pay, but secured $50 from Mrs. Carmichael which she turned over to the company, and in a day or two she paid the balance of the installment.

The note for $525 was not paid at maturity, and Mrs. Carmichael directed Wrenn to take the cars into possession until they were able to pay the note. The company then repossessed the cars. Thereafter Mrs. Carmichal made two monthly pay-

ments, and on July 11, 1932, instructed the company in writing to repaint the cars, sell them, and apply the proceeds on the purchase price, stating that, if they did not bring enough to extinguish her liability, she would pay the balance; in case of their bringing more than the amount due, she expected to be paid the difference. The cars were sold at some time undisclosed.

The plaintiff brought action in March, 1932, alleging the unlawful conversion and retention of the cars, and claiming actual and exemplary damages for the loss of her business. Issue was joined and a trial had, resulting in a verdict for plaintiff in the sum of $743.56 actual, and $250 exemplary, damages. Defendants moved for a new trial, which was denied, and thereafter appealed from the judgment.

Error is predicated upon the alleged insufficiency of the evidence to warrant the verdict and judgment; that the verdict is against law; upon the denial of motion for a directed verdict and denial of a new trial; error is also predicated upon the giving of certain instructions.

In support of the judgment, plaintiff contends that the contract in evidence is not in fact a conditional sale contract, but that Mrs. Carmichael bought the cars outright, giving her notes therefor, and that she (Mrs. Evans) purchased the cars from Mrs. Carmichael and obtained title thereto; that the acceptance of the "Inspiration Stock" as security constituted a down payment, and, consequently, the nonpayment of the secured note did not entitle the defendant company to repossession of the cars. Counsel assert that there is evidence in the record supporting implied findings to this effect, and therefore this court cannot disturb the verdict and judgment.

In answer to the contention that the verdict is contrary to the court's instructions and therefore against law, plaintiff makes cross-assignments of error on the admission of the "so-called conditional sale contract" in evidence, and on the court's instructions to the effect that under the contract the defendant company reserved title to the cars, and the two women were only entitled to possession while the payments provided for in

the contract were made, that the defendant had the right to take possession of the cars if such payments were not made, and that, if the jury found for the plaintiff, they must set off against the damages awarded the unpaid portion of the purchase price.

The contract in evidence, entitled "Conditional Sale Contract," recites that the company "hereby sells," and Mrs. Carmichael "hereby purchases, subject to the terms and conditions herein set forth," the cars described, at the agreed purchase price "as follows: Five Hundred and twenty-five * * * dollars to be paid on or before February 15, 1932, and the balance to be paid at the rate of Seventy-one and 28/100 dollars per month for eighteen (18) months." It then provides that, while in her possession, the purchaser assumed the risk of loss, and, "if any of my * * * indebtedness shall become due and remain unpaid * * * or in case of misuse or abuse * * * you or your assigns may, without any previous notice or demand of performance, and without legal process * * * take possession thereof, after which you may, at your option, make such disposition of said chattel as you shall deem fit."

It is true that the contract does not expressly reserve title in the seller and that the contract, in itself, without the notes, was sufficient. However, in determining the nature of such a contract, the courts are governed by the intention of the parties thereto, as disclosed by the terms of the instrument (*Stern* v. *Drew,* 52 App. D. C. 191, 285 Fed. 925), and this intention is to be drawn from the whole scope and effect of the language employed (*Butte Floral Co.* v. *Reed,* 65 Mont. 138, 211 Pac. 325; *Ferry & Co.* v. *Forquer,* 61 Mont. 336, 202 Pac. 193, 29 A. L. R. 642).

Where the seller retains title to the thing sold until the purchase price is paid, the transaction is a conditional sale (*Bierce* v. *Hutchins,* 205 U. S. 340, 27 Sup. Ct. 524, 51 L. Ed. 828; *Bass, Heard & Howie Co.* v. *International Harvester Co.,* 169 Ala. 154, 53 So. 1014, 33 L. R. A. (n. s.) 374; *State ex rel. Malin-Yates Co.* v. *Justice of the Peace Court,* 51 Mont. 133,

149 Pac. 709), and it is immaterial that the seller takes a note or notes for the deferred payments (*Heinbockle* v. *Zugbaum,* 5 Mont. 344, 5 Pac. 897, 51 Am. Rep. 59; *Pease* v. *Teller,* 22 Idaho, 807, 128 Pac. 981; *Monitor Drill Co.* v. *Mercer,* 163 Fed. 943, 90 C. C. A. 303, 16 Ann. Cas. 214, 20 L. R. A. (n. s.) 1065). There need be no express retention of title, as such reservation may be inferred from the provisions of the contract and the acts of the parties. (*Blackford* v. *Neaves,* 23 Ariz. 501, 205 Pac. 587; *Pratt* v. *Welcome,* 6 Cal. App. 475, 92 Pac. 500; Tiedeman on Sales, sec. 201:8; Jones on Sales, secs. 922–928.)

In *Silver Bow Min. & M. Co.* v. *Lowry,* 6 Mont. 288, 12 Pac. 652, it was held that, under the facts in that case, the taking of security on other property rendered the sale absolute, notwithstanding the agreement of the parties that title to the property sold should not pass until the note for the purchase price was paid. This doctrine is based upon *Heryford* v. *Davis,* 102 U. S. 246, 26 L. Ed. 160. However, "according to the better view, the fact that the seller takes additional security for the price, such as a mortgage on other property or the like, will not render the reservation of title until the price is paid inoperative as a conditional sale." (24 R. C. L. 448.) In support of this text, the author cites *Bierce* v. *Hutchins,* above, and numerous other cases. In the *Bierce Case* the Supreme Court of the United States held that the absolute liability for the price and putting that liability in the form of a note are consistent with the retention of title until the note is paid, and, in the absence of a statute, a stipulation that the sale is conditional and the goods remain the property of the seller until the payment of the note is lawful and enforceable, even where possession was given and additional security required; thus, in effect, overruling *Heryford* v. *Davis,* above. While the *Silver Bow Mining Company Case* was correctly decided on the facts before the court, it is not authority for here holding that the contract before us constitutes an absolute sale.

This contract is clearly a legal conditional sale contract, and ▮ the court did not err in admitting it in evidence, nor in instructing the jury, as it did, on the effect of the contractual terms.

It is true that the plaintiff testified that she did not sign the installment note; that she wanted the cars paid for in full in advance, and "took it for granted" that they would be paid for in full at the time of purchase or within sixty days; that she did not know the terms of the contract; and that she bought the cars outright from Mrs. Carmichael, their purchase price constituting a part of a $3,000 loan for three years which she negotiated with Mrs. Carmichael. For this reason counsel contend that there is evidence to support the verdict, and therefore this court must affirm the judgment. (*Komposh* v. *Powers*, 75 Mont. 493, 244 Pac. 298.) But the rule is that, in order to sustain the judgment, the evidence must preponderate in favor of the findings on which it is based. Herein the plaintiff herself later admitted that she did sign both notes, and her abortive contract with Mrs. Carmichael evidences her knowledge of the terms and conditions of the contract and her understanding that she was to make the payments by which alone she would be entitled to remain in possession of the cars and finally obtain title to them. Further, she had knowledge of the execution of the conditional sale contract by Mrs. Carmichael, and so admitted, and was so intimately connected with the transaction that she was chargeable with notice of the contents of the contract immediately made a public record.

The plaintiff asserts that the down payment was waived "by the conduct of the defendants in accepting the Inspiration Stock subsequent to the execution of the contract in question." This contention is based upon the erroneous premise that there was a subsequent variation of the terms of the agreement. At the time Mrs. Carmichael signed the contract, she agreed to deliver the stock as security for the payment of that which should have been paid at that time, and the only reason she did not do so was because the stock was then in Anaconda; she secured and delivered the stock the day following the signing

of the contract and before the cars were delivered to Mrs. Evans.

The acceptance of a note, with additional security for its █ payment, for the amount of a payment due under a conditional sale contract, is not to be deemed a waiver of the condition of the sale, so as to thereby pass title to the purchaser, unless it appears to have been so intended. (*Anderson Carriage Co.* v. *Bartley*, 102 Me. 492, 67 Atl. 567.)

The contract between Mrs. Carmichael and Mrs. Evans has █ no effect in the present case. The deal was made with the defendants in the name of Mrs. Carmichael, but for the benefit of Mrs. Evans, and the attempted sale of the cars by the former conveyed no better title to the latter than Mrs. Carmichael obtained from the defendants. (*Davies-Overland Co.* v. *Blenkiron*, 71 Cal. App. 690, 236 Pac. 179.)

Mrs. Evans breached the contract when she failed to pay the second installment due, and compelled Mrs. Carmichael to pay $50 of that payment; Mrs. Carmichael breached it when she failed to pay the $525 note when it became due, but this breach may well be attributed to the fact that the contract had already been breached and was considered at an end. After Mrs. Carmichael notified the company to take possession of the cars, Mrs. Evans obtained the contract from her and destroyed it, presumably with the note mentioned therein, as Mrs. Evans stated that she destroyed the "papers."

Plaintiff contends that the defendants elected to retake the cars and consider the contract as existing, but broken, and therefore only had a right of action for damages, citing *First Nat. Bank* v. *Marlowe*, 71 Mont. 461, 230 Pac. 374. The facts do not support the contention; the defendants proceeded to exercise their power under the contract and merely delayed the sale of the cars to enable Mrs. Carmichael to cure her default if she could do so. When the sale was finally made, it was without regard to Mrs. Carmichael's written directions.

The evidence strongly preponderates against such implied █ findings as are necessary to support the verdict, and the verdict is against law, in that it is contrary to the instructions

correctly stating the law governing the rights of the defendants under the contract.

The judgment is reversed and the cause remanded to the district court of Silver Bow county, with direction to enter judgment in favor of the defendants.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur.

Rehearing denied February 9, 1934.